## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |  |
|---|---|---|
| PHILADELPHIA 76ERS L.P., | : | Civil Action No.  04-CV-4972 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| TRUSTMARK INSURANCE COMPANY, and | : |  |
| NEW JERSEY NETS BASKETBALL LLC, | : |  |
|  | : |  |
| Defendants. | : |  |

---

### AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

 Philadelphia 76ers L.P. (hereinafter the "76ers"), by and through its undersigned counsel, Cozen O'Connor, states the following claim for declaratory relief:

### PARTIES

 1. The 76ers is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at the Wachovia Center, 3601 Broad Street, Philadelphia, Pennsylvania 19148.  The 76ers own and operate a professional basketball team that is a member of the National basketball Association ("NBA").

 2. Trustmark Insurance Company ("Trustmark") is a mutual insurance company organized and existing under the laws of the State of Illinois with its principal place of business located at 400 Field Drive, Lakewood, Illinois 60045.  Trustmark is licensed to do business in the Commonwealth of Pennsylvania and at all times relevant to this Complaint issued policies of Total Temporary Disability Insurance.

3.      New Jersey Nets Basketball LLC (the "Nets"), is a limited liability corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at Nets' Champion Center, 390 Murray Hill Parkway, East Rutherford, New Jersey 07073.   The Nets own and operate a professional basketball team that is a member of the NBA and are a necessary party to resolve this dispute.

## JURISDICTION AND VENUE

4.      This is an action for Declaratory Judgment, pursuant to 28 U.S.C. §2201 and 2202.

5.      This Court has jurisdiction of this matter pursuant to the diversity of citizenship provisions of 28 U.S.C. § 1332, in that the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) and (3) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendants are subject to personal jurisdiction in this district at the time this action was commenced.

7.      An actual case or controversy of a justiciable nature exists between the parties involving their respective rights to arbitration under a policy and Certificate of Insurance.

## FACTUAL ALLEGATIONS

### A.      The Disability Insurance

8.      Trustmark issued to the National Basketball Association Trust, Master Policy No. NBA 01, effective September 1, 1999. Under the Master Policy, Trustmark agreed to Insure an Insured Player on whose behalf a Club applies for coverage against Temporary Total Disability.

9.    Under the terms of the Master Policy, each Club entitled to benefits under the Master Policy shall receive a Certificate of Insurance that sets forth a description of the benefits and coverages and applicable exclusions and limitations.

10.    The Certificates of Insurance issued by Trustmark provided that "termination [of coverage] shall <u>not</u> apply if … the Insured Player is traded to another Club.  Coverage, to the extent provided on the date of the trade, shall be transferred to the new Club." (Emphasis supplied).  A Certificate of Insurance would be transferred to the new Club pursuant to an Absolute Assignment of Disability Policy Form executed by the two Clubs and endorsed by Trustmark.

**B.    The Certificate Of Insurance Issued To The Nets**

11.    On or about August 7, 2001, the Nets signed free agent center, Todd MacCulloch. In connection with Trustmark's Temporary Total Disability Insurance coverage, the Nets submitted a Temporary Total Disability Insurance Program Application ("Application") in or about September 2001.

12.    Pursuant to the terms of the Master Policy, Trustmark issued the Nets a Certificate of Insurance providing Temporary Total Disability Insurance with respect to the Insured Player, Todd MacCulloch.

13.    Temporary Total Disability Benefits are payable under the Certificate of Insurance "for each regular season game in which the Insured Player is unable to participate due to a Temporary Total Disability."

**C.    The Assignment Of The Certificate Of Insurance**

14.    In or about August 2002, the Nets traded Todd MacCulloch to the 76ers.  In connection with the trade, the Nets, the 76ers and Trustmark executed an Absolute Assignment of Disability Form ("Assignment"), effective August 6, 2002.  Under the Assignment, the Nets,

as Assignor, assigned and transferred absolutely all right, title and interest in the Certificate of Insurance and any subsequent certificates or amendments to the 76ers together with the right to collect all benefits due under the Certificate of Insurance subject to its terms and conditions. The Assignment provided further that "Any defenses, counterclaims, or offset rights the Insurer may have against the Assignor [the Nets] are waived as against the Assignee [the 76ers]. Any defenses, counterclaims, or offset rights the insurer may have against the Assignor are reserved for three years from the date the Assignor executes this form."

15.     Trustmark expressly approved of the form of Assignment.

16.     The Assignment was in a form expressly approved by Trustmark and utilized by every NBA Club where an Insured Player is traded. Under the terms of the Assignment Trustmark agreed to waive all defenses and counterclaims against the assignee Clubs at the NBA's request in order to facilitate Clubs' ability to trade Insured Players.

**D.     The 76ers' Claim For Disability Benefits**

17.     In or about February 2003, Todd MacCulloch was diagnosed as suffering from Charcot-Marie Tooth ("CMT") disease, a debilitating, inherited neurological disorder that causes patients to lose normal use of their feet and legs (and sometimes hands and arms) slowly as the nerves to these extremities degenerate. The 76ers notified Trustmark's agent, BWD Group LLC, of Mr. MacCulloch's condition on February 13, 2003.

18.     On or about January 14, 2004, the 76ers submitted a Proof of Claim for Benefits under the Master Policy and Certificate of Insurance. The 76ers Proof of Claim was accompanied by a Physician's Claim Statement certifying that Todd MacCulloch was unable to perform his activities as a professional basketball player in the NBA.

19.     Although the 76ers made timely payments of all premiums due under the Policy, and without disputing that Todd MacCulloch suffered an injury and disease certified by a

physician as rendering him incapable of performing his duties as a professional basketball player in the NBA, Trustmark wrongly, maliciously and without reasonable justification, denied the 76ers' claim for Total Temporary Disability benefits by letter dated April 26, 2004. Despite the plain terms of the Assignment form to which it expressly approved and agreed, Trustmark based its denial of coverage for a severe, hereditary neurological disorder, upon the Nets' purported failure to disclose in its Application that MacCulloch was allegedly suffering from a transitory case of mild plantar fasciitis that's commonly experienced by NBA players.

20.     The Certificate of Insurance provided for arbitration of disputes by stating:

> Any dispute arising from the contract between the Policyholder, the NBA or any Club on the one hand and BWD or US on the other hand, shall be submitted to binding arbitration. The Commercial arbitration Rules of the American Arbitration Association shall apply, except with respect to selection of the arbitration panel and location.
>
> Each party to the arbitration shall select one arbitrator. A third independent arbitrator shall be selected by the first two arbitrators. Arbitration shall be held in a location agreed to by the parties. If no location can be agreed upon, arbitration shall be held at the then current main corporate office of the American Arbitration Association. If the American Arbitration Association is not in existence or its offices unavailable, arbitration shall be held at Our home office.
>
> The costs of arbitration shall be borne equally by all the parties thereto.

**E.     The 76ers' Demand For Arbitration**

21.     On September 1, 2004, the 76ers filed its Demand for Arbitration against Trustmark seeking benefits due under the Master Policy and Certificate of Insurance in an amount in excess of $4 million along with interest, costs and punitive damages (the "76ers' Arbitration Claim"). A true and correct copy of the 76ers' Demand for Arbitration is attached hereto, made a part hereof, and marked Exhibit "A." In support of its claim, the 76ers cited,

among other grounds, the Assignment under which Trustmark agreed that all defenses, counterclaims and offset rights that it may have against the Nets were waived against the 76ers. Additionally, the 76ers cited the provision in the Certificate of Insurance under which Trustmark agreed that "No statement made in any application or knowledge by any Club or Player shall be imputed to any other Club or Player."

22.    Trustmark filed its Answer to the 76ers' Arbitration Demand on October 1, 2004. A true and correct copy of Trustmark's Answer to the 76ers' Arbitration Demand is attached hereto and marked Exhibit "B." Thereafter, the 76ers appointed Kenneth R. Feinberg, Esquire as its party arbitrator and Trustmark appointed Michael Cooper as its party arbitrator. Mr. Feinberg and Mr. Cooper are presently in the process of selecting the neutral arbitrator called for in the parties' arbitration agreement.

**F.    Trustmark's Demand For Arbitration**

23.    October 1, 2004, Trustmark also filed its own Demand for Arbitration against the 76ers and the Nets ("Trustmark's Arbitration Claim"). A true and correct copy of Trustmark's Arbitration Claim is attached hereto and marked as Exhibit "C." As against the 76ers, Trustmark sought rescission of the Certificate of Insurance on the basis of alleged misrepresentations in the Application submitted by the Nets, and claimed that the 76ers had a duty prior to accepting the Assignment to verify the information provided in the policy Application and advise Trustmark of any inaccuracies. Alternatively, and pursuant to the provisions in the Assignment, Trustmark asserted claims for damages against the Nets in the event that it is required to pay the 76ers' claim for Temporary Total Disability Benefits.

24.    In a conference call with the AAA held on October 7, 2004 in connection with the 76ers' Arbitration Claim against Trustmark, the 76ers did <u>not</u> consent to consolidation of its claim with Trustmark's claim as requested by Trustmark. See October 8, 2004 letter from AAA

discussing October 7, 2004 conference call, a true and correct copy of which is appended hereto and marked as Exhibit "D."

25.     By letter dated October 15, 2004, counsel for the Nets advised the AAA that it objected to Trustmark's Arbitration Claim and in particular to the procedure sought to be invoked by Trustmark. A true and correct copy of counsel's October 15, 2004 letter is appended hereto and marked as Exhibit "E."  Specifically, counsel for the Nets pointed out that "the arbitration procedure set forth in the Certificate of Insurance contemplates explicitly that 'each party may select an arbitrator" and that Trustmark had "wrongfully attempted to deny to the Nets that right by naming two respondents and instead asserts that the Nets and 76ers 'shall jointly appoint one.'"

26.     Additionally, counsel for the Nets sent a second letter dated October 15, 2004 to Trustmark's counsel objecting to the Nets' inclusion in Trustmark's Arbitration Claim and the procedure sought to be invoked.  A true and correct copy of counsel's October 15, 2004 letter to Trustmark's counsel is appended hereto and marked as Exhibit "F."  As a result, the Nets have taken the position, and the 76ers have agreed, that arbitration of Trustmark's claims under the circumstances suggested by Trustmark had not been agreed upon.

**G.     The NBA's Breach Of Contract Claim**

27.     On October 11, 2004, counsel for the 76ers and the Nets conducted a telephone conference call for the purpose of addressing sequencing of claims and the consolidation issue raised by Trustmark.  Also participating in the call was Jeffrey A. Mishkin, Esquire, counsel for the NBA.  During the call, Mr. Mishkin advised the parties that the NBA viewed Trustmark's failure to pay the 76ers' claim as a breach of the Master Policy and Assignment negotiated by the NBA.  Mr. Mishkin sought Trustmark's consent to intervene in the 76ers' Arbitration Claim solely for the purpose of presenting evidence and argument in connection with the applicability

of the Assignment.  Counsel for Trustmark did not consent to permitting the NBA to intervene in the 76ers' arbitration claim.  Nor did the parties agree to a procedure for the sequencing of the parties' respective claims.

28.     On October 22, 2004, the NBA filed its Statement of Claim against Trustmark with the AAA alleging that Trustmark's failure to honor the 76ers' claim constituted a breach of the Master Policy, Certificate of Insurance and the Assignment.  A true and correct copy of the NBA's Statement of Claim is appended hereto and marked as Exhibit "G."

**H.     Trustmark's Third Party Demand For Arbitration**

29.     In an attempt to override the 76ers' objection to consolidation of the cases and the objections of the Nets and the 76ers to Trustmark's tripartite Arbitration Claim, Trustmark filed a Third Party Demand For Arbitration against the Nets in the 76ers' Arbitration Case. A true and correct copy of Trustmark's Third Party Demand for Arbitration is appended hereto and marked as Exhibit "H."   Therein, Trustmark asserted identical claims against the Nets that it had asserted in the Trustmark Arbitration Case.

30.     By letter dated October 21, 2004, to the AAA, counsel for the 76ers objected to Trustmark's attempt to implead the Nets into the 76ers' Arbitration Claim as a third party defendant on the grounds that: (1) Neither the parties' arbitration agreement nor the AAA's Commercial Arbitration Rules or Procedures for Large, Commercial Complex Disputes provides for the joinder of third parties to existing arbitration disputes; (2) the parties arbitration agreement provides for bipartite arbitration proceedings under which each party is permitted to select its own arbitrator and the two party arbitrators select a third neutral arbitrator, and the joinder of the Nets, whose interests are divergent to the 76ers, is not contemplated under the arbitration agreement; and (3) Trustmark's joinder of the Nets in the 76ers proceeding is an unwarranted attempt to consolidate the 76ers' Arbitration Claim with Trustmark's Arbitration

Claim.  A true and correct copy of counsel's October 21, 2004 letter is appended hereto and marked as Exhibit "I."

31.    By letter dated October 21, 2004, to the AAA counsel for the Nets also objected to Trustmark's attempt to implead the Nets into the 76ers' Arbitration Claim.  A true and correct copy of counsel's October 21, 2004 letter is attached hereto and marked as Exhibit "J." Additionally, counsel for the Nets offered a sequencing proposal to promote the efficient administration of the parties' claims while at the same time, preserving their contractual rights. Specifically, counsel for the Nets urged that Trustmark proceed first in the 76ers' Arbitration Claim with the 76ers alone (or with permissive intervention by the NBA, should Trustmark agree).   This proceeding would allow for the determination of the totally distinct and preliminary issues regarding the effect of the Assignment on Trustmark's defenses or claims involving the 76ers.   In the event the arbitrators in the 76ers Arbitration Case rule that Trustmark is barred from asserting defenses or counterclaims against the 76ers and is therefore obligated to pay the 76ers under the Certificate of Insurance, counsel proposed that Trustmark (if it so desires after paying the 76ers' claim) could then commence a new proceeding against the Nets alone, or dismiss the claims against the 76ers in Trustmark's Arbitration Claim.  Only in the event that the arbitrators in the 76ers' Arbitration Claim defined some common issue involving the Nets and the 76ers would the question of how to proceed in that unlikely scenario become necessary.   Both the 76ers' and the NBA agreed to this sequencing proposal, but Trustmark disagreed.

## **COUNT I**

32.    The 76ers incorporate by reference the allegations contained in paragraphs 1 through 31 as though the same were fully set forth at length herein.

33.     The arbitration agreement set forth in the Certificate of Insurance provides for arbitration of bipartite disputes under which each party is entitled to select an arbitrator and the two party arbitrators select a third arbitrator.  The arbitration agreement  provides for neither the arbitration of tripartite disputes in cases where the interests of each of the parties is diverse, nor for the consolidation of claims involving multiple parties.

34.     The interests of the 76ers and the Nets are diverse in that if the arbitrators agree with the 76ers and rule that Trustmark's claims against the 76ers are barred by the Assignment, the Nets may face exposure to claims for damages by Trustmark.  If, on the other hand, the arbitrators disagree with the 76ers and hold that the Assignment does  not bar Trustmark's rescission claim, the Nets may not face exposure to damage claims by Trustmark in the event rescission is granted.  Therefore, it would be patently unfair to require the 76ers and the Nets  to share an arbitrator in a tripartite dispute where the parties' interests are not completely aligned.

35.     The 76ers seek a declaration of the parties rights under the arbitration clause set forth in the Certificate of Insurance.

36.     Furthermore, the Certificate of Insurance containing the arbitration clause affects "commerce" within the meaning of 9 U.S.C. §1 because it was issued across state lines and therefore, affects "commerce among the several States" within the meaning of the statute. Moreover, the ability to assign of the Certificate of Insurance impacts the free transfer or players between the thirty NBA franchises doing business throughout the country.

37.     Because the contract in question is one that affects "commerce," the arbitration provision contained within it is "valid, irrevocable, and enforceable" within the meaning of 9 U.S.C. §2.

38.    "Valid, irrevocable, and enforceable" arbitration agreements may be enforced in a district court by means of "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4.

39.    Trustmark has refused to arbitrate with the 76ers in accordance with the terms of its express contractual agreement and has separately attempted to frustrate the 76ers' right to a bipartite arbitration proceeding  by filing counter arbitration demands, pursuing consolidation and third party joinder practice that is not authorized by the terms of the parties' agreement or the rules of the AAA, and seeking to assert defenses it has waived and that are based upon the activities of parties who are not properly made parties to any arbitration between the 76ers and the Nets.

WHEREFORE, the 76ers request this Court to issue an Order declaring that the arbitrations filed by the 76ers and Trustmark proceed in the manner, both as to sequencing and substance, intended by the arbitration agreement contained in the Certificate of Insurance so that:

(i) The appointment of a panel of arbitrators in the 76ers' Arbitration Claim be completed in accordance with the procedure set forth in the parties arbitration agreement;

(ii) The NBA shall be permitted to intervene in the 76ers' Arbitration Claim, upon stipulation of the parties, solely for the purpose of presenting evidence and argument with respect to the preliminary issue and without the right to appoint an arbitrator;

(iii) The 76ers' Arbitration Claim and Trustmark's Arbitration Claim are stayed in order for the 76ers, NBA an Trustmark to select a neutral arbitrator mutually agreeable to all the parties to determine the "preliminary issue" of whether the 76ers are entitled to be paid its Temporary Total Disability Claim with respect to Todd MacCulloch regardless of whether the Application submitted by the New Jersey Nets contained a misrepresentation and/or failed to disclose facts material to the risk.  The preliminary issue being whether the Assignment bars Trustmark from asserting any defenses or counterclaims against the 76ers (including the right to rescind the policy) based upon misrepresentations made or

information provided by the Nets and/or Todd MacCulloch or any of their other acts or omissions;

(iv) The preliminary issue shall resolve on an expedited basis with limited discovery within ninety (90) days of the appointment of the neutral arbitrator;

(v) If the arbitrators selected in the 76ers Arbitration Claim rule that the application of the Assignment and insurance contract language bars Trustmark from asserting a defense or counterclaim against the 76ers based upon the representations made or information provided by the Nets and/or Todd MacCulloch in the Application or any other act or omission they may have committed, Trustmark shall within ten (10) days make payment of the amounts due and owing to the 76ers as of the date of that decision, and thereafter make those payments required under the policy as they accrue;

(vi) Any claim for extra-contractual damages the 76ers should elect to continue to pursue against Trustmark shall be arbitrated in the 76ers' Arbitration Claim;

(vii)  Trustmark and the Nets shall separately arbitrate the claims Trustmark asserts against the Nets in Trustmark's Arbitration Claim and the 76ers shall be dismissed from that proceeding;

(viii) If the arbitrator rules that the application of the Assignment and insurance contract language do not bar Trustmark from asserting a defense or counterclaim against the 76ers, the two arbitration cases shall be consolidated and the parties shall proceed to resolve all of the remaining claims and defenses of the parties before an arbitration panel in which each party shall have the right to select an arbitrator and each set of party arbitrators shall select a neutral arbitrator.

B.  The 76ers be awarded its costs in this proceeding; and

C.  The Court award Plaintiff any and all other relief to which it is entitled.

Dated:  October 25, 2004

                                        COZEN O'CONNOR


                                        By:_____
                                               Stephen A. Cozen
                                               Robert W. Hayes
                                               Lawrence D. Jackson

                                               1900 Market Street
                                               Philadelphia, PA 19103
                                               (215) 665-5530
                                               Attorneys for Claimant,
                                               Philadelphia 76ers L.P.