IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

PHILADELPHIA 76ERS L.P.,

       Plaintiff,

  v.

TRUSTMARK INSURANCE COMPANY, and NEW JERSEY NETS BASKETBALL LLC,

       Defendants.

No. 04-CV-4972 (EL)

---

**PROPOSED ORDER**

  AND NOW, this _____ day of _____, 2004, upon consideration of the Motion of Defendant Trustmark Insurance Company to Dismiss the Amended Complaint pursuant to F.R.C.P. 12(b)(3) and all responses thereto, it is hereby,

  ORDERED that the Motion is GRANTED and the Amended Complaint is DISMISSED.

             _____
             Hon. Edmund V. Ludwig, USDJ

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILADELPHIA 76ERS L.P.,

                Plaintiff,

v.

TRUSTMARK INSURANCE COMPANY, and NEW JERSEY NETS BASKETBALL LLC,

                Defendants.

No. 04-CV-4972 (EL)

## PROPOSED ALTERNATIVE ORDER

AND NOW, this _____ day of _____, 2004, upon consideration of the Motion of Defendant Trustmark Insurance Company to Transfer the Amended Complaint pursuant to 28 U.S.C.A. 1404(a) and all responses thereto, it is hereby,

ORDERED that the Motion is GRANTED and this action is TRANSFERRED to the United States District Court for the Southern District of New York.

                                                    _____
                                                    Hon. Edmund V. Ludwig, USDJ

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

PHILADELPHIA 76ERS L.P.,

                Plaintiff,

v.

TRUSTMARK INSURANCE COMPANY, and NEW
JERSEY NETS BASKETBALL LLC,

                Defendants.

No. 04-CV-4972 (EL)

---

**TRUSTMARK INSURANCE COMPANY'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION TO TRANSFER**

Defendant Trustmark Insurance Company ("Trustmark"), for the reasons set forth more fully in the accompanying Memorandum in Support, which is incorporated herein by reference, respectfully moves this Court for an Order dismissing plaintiff's amended complaint, or in the alternative, for an Order transferring this action to the Southern District of New York.

November 22, 2004

                DRINKER BIDDLE & REATH LLP

              *Stephen C. Baker* /gwd
              Stephen C. Baker
              One Logan Square
              18th & Cherry Streets
              Philadelphia, PA 19103-6996
              Phone: (215) 988-2700
              Facsimile: (215) 988-2757

CLEARY, GOTTLIEB, STEEN & HAMILTON
Jeffrey A. Rosenthal
One Liberty Plaza
New York, New York 10006
Phone: (212) 225-2000
Facsimile: (212) 225-3999

Attorneys for Trustmark Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------

PHILADELPHIA 76ERS L.P.,

                Plaintiff,

      v.

TRUSTMARK INSURANCE COMPANY, and NEW
JERSEY NETS BASKETBALL LLC,

                Defendants.

No. 04-CV-4972 (EL)

------------------------------------------------------------------------

**TRUSTMARK INSURANCE COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION TO TRANSFER**

DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, Pennsylvania 19103-6996
(215) 988-2700

CLEARY, GOTTLIEB, STEEN & HAMILTON
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Trustmark Insurance Company

Defendant Trustmark Insurance Company ("Trustmark") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint filed by Philadelphia 76ers L.P. ("the 76ers") on October 25, 2004 (the "Amended Complaint") or, in the alternative, Motion to Transfer this action to the Southern District of New York.

## PRELIMINARY STATEMENT

Virtually the only relief not sought by the 76ers in its Amended Complaint is that this Court order the arbitral tribunal to grant an award in the 76ers' favor. While the 76ers seek to have this Court usurp one of the most fundamental roles of arbitrators and enter relief far beyond its authority under the Federal Arbitration Act ("FAA"), they are not even issues for this Court to address. Venue does not lie in this district and, accordingly, this action must be dismissed or, at a minimum, transferred to the proper forum.

## FACTUAL BACKGROUND[1]

Trustmark is the administrator and insurer of the National Basketball Association (the "NBA") Temporary Total Disability ("TTD") Program, which is memorialized in the NBA Master Policy between Trustmark and the NBA (the "Master Policy"), and provides the NBA Clubs with insurance in the event of temporary total disability. Am. Compl. ¶ 8. In September 2001, New Jersey Nets Basketball LLC ("the Nets") applied for insurance for Todd MacCulloch, a player whom the Nets had recently signed to a multi-year contract. Am. Compl. ¶ 11. Pursuant to the Master Policy, Trustmark soon thereafter issued to the Nets a Certificate of Insurance (the "Certificate") for MacCulloch. Am. Compl. ¶ 12.

Before the 2002/03 NBA season, the Nets traded MacCulloch to the 76ers. Am. Compl. ¶ 14. In connection with this trade on August 6, 2002, the Nets assigned the Certificate

---

[1] While not agreeing with the 76ers' factual allegations, for purposes of this Motion, Trustmark relies upon the allegations in and documentary evidence annexed to the Amended Complaint.

to the 76ers, (Am. Compl. ¶ 14), as required by the terms of the Certificate itself. Am. Compl. ¶ 10. However, injuries prevented MacCulloch from playing professional basketball and the 76ers eventually filed a claim for benefits with Trustmark in January 2004. Am. Compl. ¶¶ 17-18. Trustmark denied the 76ers' TTD claim in a letter dated April 26, 2004 based on misrepresentations made in MacCulloch's application for the TTD Program. Am. Compl. ¶ 19.

## PROCEDURAL HISTORY

On September 1, 2004, pursuant to the arbitration clause in the Certificate, the 76ers filed a Demand for Arbitration against Trustmark with the American Arbitration Association ("AAA") and designated Kenneth R. Feinberg as its party arbitrator. Am. Compl. ¶¶ 20-22.[2]

This arbitration has been proceeding. On October 1, 2004, Trustmark filed an Answer to the 76ers' Demand for Arbitration and designated Michael A. Cooper as its party arbitrator. Am. Compl. ¶ 22. That same day, Trustmark filed a separate Demand for Arbitration against the 76ers and the Nets, asserting claims against both Clubs primarily based on the misrepresentations in the original application for coverage and the circumstances surrounding the subsequent assignment. Am. Compl. ¶ 23.

Because the 76ers and the Nets would not consent to the consolidation of the two related arbitrations, and indeed the Nets refused to participate entirely in the separate arbitration filed by Trustmark against it, Trustmark also filed a Third Party Demand for Arbitration against the Nets on October 18, 2004, seeking to join the Nets in the arbitration initiated by the 76ers on September 1, 2004. Am. Compl. ¶¶ 24-25, 29.

---

[2] The 76ers, the Nets, the National Basketball Association ("NBA") and Trustmark are all parties to this arbitration agreement, with the Nets and the 76ers being "Clubs" as defined in the Certificate. Am. Compl. Ex. A.

- 3 -

During an October 11, 2004 conference call among Trustmark and the two Clubs, the NBA sought Trustmark's permission to intervene on the 76ers' behalf in the arbitration initiated by the 76ers. Am. Compl. ¶ 27. This issue could not be resolved to the satisfaction of all parties and, on October 22, 2004, the NBA filed a Demand for Arbitration against Trustmark, in which the NBA sought to aid the 76ers in its attempt to obtain payment of its claim from Trustmark. Am. Compl. ¶ 28.

Though the 76ers' arbitration has continued to proceed, as evidenced by the 76ers' own acknowledgement that Messrs. Feinberg and Cooper "are presently in the process of selecting the neutral [third] arbitrator" (Am. Compl. ¶ 22), the 76ers filed its Original Complaint for Declaratory Judgment with this Court on October 22, 2004. On October 25, 2004, the 76ers filed its Amended Complaint with this Court. Finally, on or about October 25, 2004, the 76ers also initiated an action for an unknown purpose against Trustmark, the NBA, and the Nets in the Pennsylvania Court of Common Pleas (Case ID 041003326), which has never been served upon Trustmark.

### **RELIEF REQUESTED FROM THIS COURT BY THE 76ERS**

Through its Complaint, the 76ers seek this Court's intervention in determining the "sequencing and substance" of not only its own arbitration, but also of the ones filed by Trustmark and the NBA. Am. Compl. at 11. Briefly, the 76ers requests that this Court appoint an arbitration panel (even the 76ers acknowledged two members have already been named and they are currently in the process of appointing the third), allow the NBA to intervene on certain issues related to the assignment of MacCulloch's policy, and order the manner and timing in which the tribunal must hear the claims, including the scope of discovery on them. Am. Compl. at 11-12. The 76ers also seek an order from the Court staying Trustmark's claims. Am. Compl.

at 11-12. The 76ers further requests that this Court order the arbitrators to resolve the 76ers' and the NBA's issues on an expedited basis and direct how (and in what order) Trustmark's claims, and any of the 76ers' remaining claims, must proceed thereafter. Am. Compl. at 12. The 76ers identify no exigent circumstances (other than its desire to be paid money to which its entitlement is in dispute) to justify any need for expedited relief.

From the mere recitation of relief -- none of which is derived from the arbitration agreement itself -- it is obvious that the 76ers seek to have this Court substitute its discretion for the arbitral tribunal's and thus this entire action is improper. That issue, however, is for another day.

**ARGUMENT**

**POINT I**

**THIS COURT IS THE IMPROPER
VENUE FOR THE RELIEF REQUESTED
AND THUS THIS ACTION MUST BE DISMISSED**

The 76ers' Amended Complaint asks this Court to exercise its power under Section Four of the FAA, which provides that

> [a] party aggrieved by the alleged <u>failure, neglect, or refusal</u> of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . <u>The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed</u>.

9 U.S.C. § 4 (emphasis added).

While the title of Section Four of the FAA speaks solely in terms of an order to compel arbitration, Section Four has been interpreted more broadly. See, e.g., Household Bank, F.S.B. v. H & R Block, Inc., No. Civ. A. 400CV142LN, 2001 WL 737532 (S.D. Miss. May 25, 2001); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995)

(stating that "case law has interpreted § 4 to extend to parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement").

Critically, Section Four not only grants certain authority to federal courts, but it also sets limitations. See id. at 326. Significantly, Section Four prescribes the appropriate venue in which a party must seek relief under its provisions. Id. at 327 (stating that Section Four "establishes the appropriate venue in which" a party "may seek to compel relief"). See also Prudential Sec., Inc. v. Desmond, No. Civ. A. 96-CV-8407, 1997 WL 570926 (E.D. Pa. Sept. 5, 1997) (dismissing case for lack of venue under Section Four's provisions). Under well-established precedent both within the Third Circuit and this district, Section Four of the FAA prevents a district court from issuing an order directing an arbitration that is to occur outside of the district. See Feinberg v. Ass'n of Trial Lawyers Assurance, No. Civ. A. 01-6966, 2002 WL 31478866, at *2 (E.D. Pa. Nov. 4, 2002) ("Under the FAA, a district court has no power to order arbitration outside of its own district."); Steedle v. Zimmerman, No. 02-CV-0089, 2002 WL 1925702, at *2 (E.D. Pa. Feb. 13, 2002) (stating that under Section Four "arbitration must take place 'in the district court where the petition [to compel arbitration] is filed'") (alteration in original) (citations omitted); Prudential, 1997 WL 570926 at *2 (stating that Section Four "requires that if a court directs or compels arbitration, then the arbitration must take place within that court's district"); Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974) (holding that the district court erred in ordering arbitration in New York after noting the "unambiguous statutory language limiting the district court's power to order arbitration outside of the district"). See also Snyder v. Smith, 736 F.2d 409, 418 (7th Cir. 1984) ("Under the statute, a district court has no power to order arbitration to take place outside of its own district."), cert. denied, 469 U.S. 1037 (emphasis added). Importantly, even if venue would

otherwise be proper under 28 U.S.C. § 1391(a), it must also be satisfied under Section Four of the FAA. Prudential, 1997 WL 570926 at *3.

Here, the arbitration undeniably is not to take place within the Eastern District of Pennsylvania. The arbitration clause in the Certificate of Insurance explicitly provides that, absent agreement by the parties (which has not occurred), arbitration will occur at the AAA's main corporate office in New York City. See AAA Home Page, Offices Page, at http://www.adr.org (Nov. 22, 2004) (stating that the AAA's corporate headquarters are in New York City). Courts must give respect to such forum selection clauses. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15-19 (1972). See also Beck v. CIT Group/Credit Finance, Inc., No. Civ. A. 94-5513, 1995 WL 394067, at *8 (E.D. Pa. June 29, 1995) (transferring action to the Southern District of New York as provided in the contracts because the forum selection clauses "are valid, enforceable and applicable to this action"); Giordano v. I.R. Witzer, 558 F. Supp. 1261 (E.D. Pa. 1983) (dismissing action after determining that the forum selection clause, providing for litigation in Delaware, should be enforced).

Because the arbitration clause dictates that arbitration will occur in New York City unless Trustmark consents to it being elsewhere, this Court lacks authority to grant the relief requested. Therefore, venue does not lie in this district and this matter should be dismissed. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.") (emphasis added); Econo-Car, 499 F.2d at 1394 (reversing the district court and ordering dismissal after noting the "unambiguous statutory language limiting the district court's power to order arbitration outside of the district").

### POINT II

### ALTERNATIVELY, EVEN IF NOT DISMISSED, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

Section 1406(a) provides for either dismissal or transfer of a case filed in an improper venue. 28 U.S.C. § 1406(a). Specifically, Section 1406(a) allows a district court to transfer such case, "if it be in the interest of justice, . . . to any district or division in which it could have been brought." Id.

The arbitration agreement provides that arbitration will occur in New York City. See AAA Home Page, Offices Page, at http://www.adr.org (Nov. 22, 2004). Thus, this dispute "could have been brought" in the Southern District of New York. See 28 U.S.C. § 1406(a); Econo-Car, 499 F.2d at 1394 n.14 (stating that the district court in New York "would view the agreement to arbitrate as a waiver in New York of any possible objections [the defendant] might make to the court's venue"). Moreover, case law recognizes that the location selected by the parties in their arbitration agreement is the proper venue for a transfer. See Bosworth v. Enrenreich, 823 F. Supp. 1175, 1180 (D.N.J. 1993) (transferring venue under 28 U.S.C. § 1406(a) to the Southern District of New York because the arbitration agreement provided for arbitration in New York City); O & G Carriers, Inc. v. Rosenthal & Co., 685 F. Supp. 66, 67 (S.D.N.Y. 1988) (transferring venue under 28 U.S.C. § 1406(a) to the federal district court located in the contract's forum selection clause). Accordingly, if this case is not dismissed and this Court decides the interests of justice do not warrant dismissal, this action should be transferred to the Southern District of New York.

### CONCLUSION

For the foregoing reasons, the 76ers' Amended Complaint should be dismissed for improper venue, or in the alternative, transferred to the Southern District of New York.

November 22, 2004                          DRINKER BIDDLE & REATH LLP

*/s/ Stephen C. Baker*
Stephen C. Baker
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: (215) 988-2700
Facsimile: (215) 988-2757

CLEARY, GOTTLIEB, STEEN & HAMILTON
Jeffrey A. Rosenthal
One Liberty Plaza
New York, New York 10006
Phone: (212) 225-2000
Facsimile: (212) 225-3999

Attorneys for Trustmark Insurance Company

## **CERTIFICATE OF SERVICE**

I, John B. Dempsey, hereby certify that a copy of the foregoing Motion to Dismiss, or in the Alternative, Motion to Transfer, the Memorandum in Support, and proposed forms of Order, were served by overnight mail upon the following attorneys:

Stephen A. Cozen, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

*Counsel for Philadelphia 76ers L.P.*

New Jersey Nets Basketball, LLC
390 Murray Hill Parkway
East Rutherford, NJ 07073

Robert J. Kheel, Esq.
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY 10019

*Counsel for New Jersey Nets Basketball LLC*

John B. Dempsey