PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
LAS VEGAS
LONDON
LOS ANGELES



**COZEN**
**O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

1900 MARKET STREET     PHILADELPHIA, PA 19103-3508     215.665.2000     800.523.2900     215.665.2013 FAX     www.cozen.com

December 6, 2004

**VIA HAND DELIVERY**

Lawrence D. Jackson
Direct Phone 215.665.5530
Direct Fax     215.701.2230
ljackson@cozen.com

Honorable Edmund V. Ludwig
United States District Judge
Eastern District of Pennsylvania
12612 United States Courthouse
Independence Mall West
Philadelphia, PA 19106-1775

Re:     **Philadelphia 76ers L.P. v. Trustmark Insurance Company, et al.**
         **Civil Action No. 04-4972**
         **Our File No.: 151742**

Dear Judge Ludwig:

Enclosed is the parties' Joint Summary of Issues and Arguments for the oral argument scheduled for December 7, 2004 at 11:00 a.m.

Your Honor's consideration in this regard is appreciated

Respectfully submitted,

COZEN O'CONNOR

By:     Lawrence D. Jackson

cc:     Jeffrey A. Rosenthal, Esquire
         Stephen C. Baker, Esquire
         Robert J. Kheel, Esquire

Dockets.Justia.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA 76ERS L.P., | : | Civil Action No. 04-CV-4972 |
| Plaintiff, | : | |
| v. | : | |
| TRUSTMARK INSURANCE COMPANY, and NEW JERSEY NETS BASKETBALL LLC, | : | **JOINT SUMMARY OF THE ISSUES AND ARGUMENTS** |
| Defendants. | : | |

Philadelphia 76ers L.P. (hereinafter the "76ers"), by and through its undersigned counsel, Cozen O'Connor, Trustmark Insurance Company (hereinafter "Trustmark"), by and through its undersigned counsel, Drinker Biddle & Reath, LLP, and New Jersey Nets Basketball LLC (the "Nets"), by and through its counsel, Willkie Farr and Gallagher LLP, file this Joint Summary of Issues and Arguments.

## ISSUE I

Whether the 76ers' declaratory judgment action seeking relief under the Section 4 of the Federal Arbitration Act may proceed in the United States District Court for the Eastern District of Pennsylvania?

### TRUSTMARK'S ARGUMENT

#### POINT I

##### THIS COURT IS AN IMPROPER VENUE UNDER SECTION FOUR OF THE FEDERAL ARBITRATION ACT AND THUS THIS ACTION MUST BE DISMISSED

The 76ers' Motion to Compel Arbitration asks this Court to exercise its power under Section Four of the Federal Arbitration Act (the "FAA"). Section Four prescribes the

appropriate venue in which a party must seek relief under its provisions.[1]  Under well-established

precedent both within the Third Circuit and this district, Section Four of the FAA prevents a

district court from issuing an order directing an arbitration that is to occur outside of the district.[2]

Even if venue would otherwise be proper under 28 U.S.C. § 1391(a), it must also be satisfied

under Section Four of the FAA.[3]

      Because the arbitration clause in this case dictates that arbitration will occur in

New York City unless Trustmark consents to it being elsewhere, and courts must respect such

forum selection clauses,[4] this Court lacks authority to grant the relief requested.  Therefore,

venue does not lie in this district and this matter should be dismissed.[5]

---

[1]    See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995) (stating that Section Four "establishes the appropriate venue in which" a party "may seek to compel relief").  See also Prudential Sec., Inc. v. Desmond, No. Civ. A. 96-CV-8407, 1997 WL 570926 (E.D. Pa. Sept. 5, 1997) (dismissing case for lack of venue under Section Four's provisions).

[2]    See Feinberg v. Ass'n of Trial Lawyers Assurance, No. Civ. A. 01-6966, 2002 WL 31478866, at *2 (E.D. Pa. Nov. 4, 2002) ("Under the FAA, a district court has no power to order arbitration outside of its own district."); Steedle v. Zimmerman, No. 02-CV-0089, 2002 WL 1925702, at *2 (E.D. Pa. Feb. 13, 2002) (stating that under Section Four "arbitration must take place 'in the district court where the petition [to compel arbitration] is filed'") (alteration in original) (citations omitted); Prudential, 1997 WL 570926 at *2 (stating that Section Four "requires that if a court directs or compels arbitration, then the arbitration must take place within that court's district"); Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974) (holding that the district court erred in ordering arbitration in New York after noting the "unambiguous statutory language limiting the district court's power to order arbitration outside of the district").  See also Snyder v. Smith, 736 F.2d 409, 418 (7th Cir. 1984) ("Under the statute, a district court has no power to order arbitration to take place outside of its own district."), cert. denied, 469 U.S. 1037 (emphasis added).

[3]    Prudential, 1997 WL 570926 at *3.

[4]    See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15-19 (1972).  See also Beck v. CIT Group/Credit Finance, Inc., No. Civ. A. 94-5513, 1995 WL 394067, at *8 (E.D. Pa. June 29, 1995) (transferring action to the Southern District of New York as provided in the contracts because the forum selection clauses "are valid, enforceable and applicable to this action"); Giordano v. I.R. Witzer, 558 F. Supp. 1261 (E.D. Pa. 1983) (dismissing action after determining that the forum selection clause, providing for litigation in Delaware, should be enforced).

[5]    See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.")

## POINT II

## BECAUSE THIS COURT IS AN IMPROPER VENUE, IF THIS ACTION IS NOT DISMISSED, IT MUST BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

Section 1406(a) provides for either dismissal <u>or</u> transfer of a case filed in an improper venue.[6] Thus, if this Court decides the interests of justice do not warrant dismissal, this action must be transferred to the Southern District of New York -- the forum selected in the arbitration agreement. Case law recognizes that the location selected by the parties in their arbitration agreement is the proper venue for a transfer.[7]

---

(emphasis added); <u>Econo-Car</u>, 499 F.2d at 1394 (reversing the district court and ordering dismissal after noting the "unambiguous statutory language limiting the district court's power to order arbitration outside of the district").

[6]    28 U.S.C. § 1406(a).

[7]    <u>See</u> <u>Bosworth v. Enrenreich</u>, 823 F. Supp. 1175, 1180 (D.N.J. 1993) (transferring venue under 28 U.S.C. § 1406(a) to the Southern District of New York because the arbitration agreement provided for arbitration in New York City); <u>O & G Carriers, Inc. v. Rosenthal & Co.</u>, 685 F. Supp. 66, 67 (S.D.N.Y. 1988) (transferring venue under 28 U.S.C. § 1406(a) to the federal district court located in the contract's forum selection clause).

## 76ERS' ARGUMENT

In moving to dismiss or transfer venue under 28 U.S.C. § 1406, Trustmark seeks relief under a section of Title 28 that could not possibly apply here and confuses a motion to dismiss or transfer for improper venue under Section 1406 with a motion to transfer for the convenience of the parties and the Court under Section 1404(a).    Venue is proper in this District under Section 4 of the Federal Arbitration Act and Title 28 because the parties are diverse, the amount in controversy exceeds $75,000 and Trustmark is licensed in the Commonwealth of Pennsylvania.  While courts have transferred venue over actions to compel arbitration where they are precluded by the requirement in Section 4 of the Federal Arbitration Act that "[t]he hearings and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed" from ordering arbitration to be held in the forum expressly selected by the parties in their arbitration agreement, they may properly do so only in accordance with 28 U.S.C. § 1404(a). *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995); *Snyder v. Smith*, 736 F.2d 409 (7th Cir. 1984); *Siegel v. Homestore, Inc.*, 255 F.Supp. 2d 451, 456 (E.D.Pa. 2003).  Trustmark has not moved under Section 1404(a) and therefore the Court should simply deny its procedurally improper and substantively baseless motion to dismiss or transfer without further consideration.

To the extent the Court would nevertheless consider whether it is proper to transfer under Section 1404(a), which permits the transfer of an action for the convenience of the parties and the Court even though venue was proper in the District in which the action was filed, it is well-settled that court's discretion to transfer venue "is to be exercised in light of the strong presumption in favor of the plaintiff's choice of forum." *Mountbatten Surety Co., Inc. v. Accordia of Kentucky, Inc.*, No. 99-3052, 2000 U.S. Dist. LEXIS 333 * 8 (E.D.Pa. January 18, 2000). Unlike in every case upon which Trustmark relies, there is no express forum selection

clause which would override the strong presumption in favor of the 76ers' choice of forum.   The arbitration clause does not provide, as Trustmark contends, that the arbitration shall be held in New York unless Trustmark agrees otherwise, but rather provides that it shall be held "in a location agreed to by the parties" and selects New York City as the place of arbitration only if the parties cannot agree.  This forum selection provision requires the parties to negotiate in good faith, with the input of the arbitrators, to select a mutually convenient forum.  As confirmed in correspondence from the American Arbitration Association, in an administrative conference call held on October 7, 2004 in the arbitration commenced by the 76ers, the parties agreed that the location of the arbitration would be determined after the panel was appointed.  When the 76ers filed the Motion to Compel Arbitration (and at the present time), there was no agreement as to the place of arbitration and, as such, this Court would not displace a specific agreement as to the forum for the arbitration by ordering that Trustmark arbitrate in the manner provided in the parties' arbitration agreement.

In arguing that venue is proper only in the United States District Court for the Southern District of New York even though there is little or no nexus between the parties involved and the claims presented in these proceedings and New York City, Trustmark has extended to the instant proceedings its efforts to frustrate the 76ers' right to arbitrate is claims in a manner provided in the Certificate of Insurance.  The 76ers is entitled to relief from this improper conduct.

## **NETS' ARGUMENT**

The Nets fully support the 76ers' opposition to Trustmark's Motion to Dismiss or Transfer Venue.

## ISSUE II

Whether the 76ers' motion to compel arbitration should be stayed pending resolution of Trustmark's motion to dismiss or transfer venue?

### TRUSTMARK'S ARGUMENT

### CONSIDERATION OF THE 76ERS' MOTION TO COMPEL SHOULD BE STAYED PENDING THE RESOLUTION OF TRUSTMARK'S DISPOSITIVE MOTION TO DISMISS, OR TRANSFER, FOR IMPROPER VENUE

As an initial matter, the 76ers' Motion to Compel may not be considered by the Court at this time for one simple reason -- it has never been served. While the 76ers served Trustmark with its Summons and Complaint, it never elected to serve Trustmark with its Motion to Compel, choosing instead to send a courtesy copy to Trustmark's counsel in the pending arbitration proceeding (prior to any appearance in this action). The fact that the 76ers have never served their Motion to Compel -- and know such to be the case -- is confirmed by the 76ers' failure to file any proof of service of their Motion to Compel. Therefore, with or without a stay, the 76ers' Motion to Compel cannot be considered at this time.

In any event, given the fact that Trustmark's Motion to Dismiss, or in the alternative Transfer to the Southern District of New York, is currently pending before this Court, judicial efficiency favors the determination by this Court as to whether it is the proper court to hear this action before deciding the merits of the 76ers' demands. Indeed, given that Trustmark's Motion challenges the authority of this Court to issue any order in connection with the underlying arbitration, this Court should determine its authority before turning to the merits of any substantive motions, such as the one filed by the 76ers. Accordingly, the 76ers' Motion to Compel Arbitration should be stayed pending resolution of Trustmark's dispositive motion.[8]

---

[8]    See, e.g., Chavous v. District of Columbia Fin. Responsibility & Mgmt. Assistance Auth., 201 F.R.D. 1 (D.D.C. 2001) (ordering all discovery stayed pending resolution of the

parties' dispositive motions); <u>Phillips USA, Inc. v. Allflex USA, Inc.</u>, No. 94-2012-JWL, 1994 WL 171725 (D. Kan. Apr. 15, 1994) (staying the action pending the court's resolution of a defendant's motion for summary judgment), <u>Prows v. United States Dep't of Justice</u>, Civ. A. No. 87-1657-LFO, 1988 WL 8256 (D.D.C. Jan. 22, 1988) (granting defendant's renewed motion for a stay of discovery pending resolution of the defendant's dispositive motion).  <u>Cf.</u> <u>Starr v. Runyon</u>, Civ. A. No. 94-5413, 1995 WL 455840 (E.D. Pa. July 28, 1995) (granting defendant's motion to dismiss and accordingly denying defendant's motion to stay proceedings as moot).

## 76ERS' ARGUMENT

Trustmark argues that the 76ers' motion to compel Trustmark to arbitrate in the manner provided in the parties' arbitration agreement should be stayed pending resolution of Trustmark's motion to dismiss or transfer the 76ers' declaratory judgment action. Because Trustmark's motion to dismiss or transfer venue should be denied, Trustmark's motion to stay the 76ers' motion to compel arbitration must be similarly denied.

Trustmark also contends that it need not respond to the 76ers' motion to compel arbitration because the motion was served only on Cleary, Gottlieb, Steen & Hamilton ("Cleary Gottlieb"), which firm represents Trustmark in the arbitration proceedings. Trustmark claims that serving the motion on Cleary Gottlieb was insufficient service because counsel had not entered an appearance for Trustmark in this action at that point. Trustmark takes this position despite the fact that Cleary Gottlieb appears as counsel to Trustmark on its motion to dismiss or transfer venue and on Trustmark's motion for emergency stay. This argument is baseless and should be denied.

## **NETS' ARGUMENT**

The Nets fully support the 76ers' opposition to Trustmark's Motion to Stay the 76ers' Motion to pursuant to the expedited procedures available under the Federal Arbitration Act to compel Trustmark to arbitrate in a manner provided by the parties' arbitration agreement.

## ISSUE III

Whether the 76ers are entitled to the relief sought in its motion to compel arbitration at this time?

### 76ERS' ARGUMENT

The 76ers have moved pursuant to the expedited procedures available under the Federal Arbitration Act, 9 U.S.C. §4, for an order directing Trustmark to arbitrate in a manner provided by the parties arbitration agreement. The 76ers' arbitration claim against Trustmark seeks the payment of benefits under a Certificate of Insurance with respect to their Insured Player, Todd MacCulloch. The Certificate of Insurance under which the 76ers base their claim was assigned by the Nets to the 76ers under their trade agreement and pursuant to an agreement negotiated between Trustmark and the National Basketball Association ("NBA"). The Absolute Assignment of Disability Form ("Assignment") endorsed by Trustmark provided that "[a]ny defenses, counterclaims, or offset rights [Trustmark] may have against the [Nets] are waived as against the [76ers]. Any defenses, counterclaims, or offset rights [Trustmark] may have against the [Nets] are reserved for three years ...."

The arbitration agreement in the Certificate of Insurance contemplated bipartite arbitration under which each party (or party sharing identical interests) is permitted to select a party arbitrator and the two party arbitrators then select a third neutral arbitrator. Notwithstanding Trustmark's waiver of claims and defenses against the 76ers in the Assignment and the bipartite nature of the arbitration procedure set forth in the parties' arbitration agreement, Trustmark filed its own Demand for Arbitration against the 76ers and the Nets. As against the 76ers, Trustmark sought rescission of the Certificate of Insurance on the basis of alleged misrepresentations in the Policy Application submitted by MacCulloch's former team, the Nets. As against the Nets, Trustmark sought damages in the event it is required to pay the 76ers' claim. In addition to filing its own Demand for Arbitration, Trustmark filed an identical Third Party

Claim for damages against the Nets in the 76ers' arbitration claim. Although the interests of the 76ers and the Nets are not identical, Trustmark has taken the position that the 76ers and the Nets must share an arbitrator.

On October 22, 2004, the NBA filed its Statement of Claim with the AAA against Trustmark seeking a declaration that Trustmark breached its contractual obligations to it under the master group disability policy when Trustmark refused to honor its obligations to the 76ers under the Certificate of Insurance and the Assignment. The NBA sought a declaration that the Assignment provisions and a severability clause in the Certificate of Insurance precluded Trustmark from denying the 76ers' claim based upon alleged misrepresentations of the Nets.

Even after the 76ers sought relief in this Court, Trustmark continued its procedural gamesmanship by filing a purported Third Party Demand for Arbitration against the Nets and the 76ers in the NBA's proceeding raising the same allegations and asserting the very same claims that it presented in its own arbitration demand and its Third Party Arbitration Demand filed in the 76ers' arbitration case. Remarkably, Trustmark also alleged in its Answer to the NBA's claim that the NBA's arbitration claim against Trustmark should be consolidated with the arbitration claim filed by the 76ers and asserted that the NBA and the 76ers should be required to consent to joint briefing and the appointment of one attorney on their behalf to argue all common issues, procedural and substantive, to the arbitration tribunal.

Trustmark's efforts to join its damage claims against the Nets in the 76ers' arbitration claim for benefits due under the Certificate of Insurance evidences Trustmark's bad faith effort to delay paying benefits owed to the 76ers and Trustmark's continued efforts to frustrate the 76ers' right to arbitrate its own claims against Trustmark in the manner provided by the parties' arbitration agreement by creating a tripartite arbitration. Trustmark's procedural gamesmanship has furthermore denied the 76ers of an important benefit under the Assignment; that being to

allow teams who are assigned coverage in connection with  the trade of a player to obtain

payment of disability benefits without incurring the costs and expense of arbitrating whether the

policy application contained material misrepresentations or omissions.  If this matter is arbitrated

with a tripartite proceeding and/or without a preliminary determination of the affect of the

Assignment and policy language, the 76ers who have already been deprived this benefit, will be

forced to experience undue delay and to incur unnecessary costs.  For these reasons, the 76ers'

claim against Trustmark should proceed first, without consideration of Trustmark's contingent

claim against the Nets.

## NETS' ARGUMENT

Although the Nets is a named defendant in this action, it joins in the prayer for the relief sought by the Plaintiff 76ers.  The Nets fully supports the 76ers' efforts to defeat Trustmark's improper effort to collapse and converge, in violation of the applicable arbitration provision, two separate and distinct arbitration disputes, and urges the Court to grant the relief requested.

Trustmark is, of course, entitled contractually to file an arbitration claim against the Nets.  In fact it has done so.  The Nets does not contest that right, although it is constrained to note that it believes that Trustmark's claim will ultimately fail on the merits.  What the Nets strongly contests, what the Nets is not required to do under the agreed-upon contractual arbitration procedures, is Trustmark's attempt to make it participate in an arbitration proceeding in which another dispute -- the 76ers' separate dispute with Trustmark before a separate panel of arbitrators -- is somehow combined, in contravention of the Nets' agreement.

"Arbitration depends on the consent of the parties to the agreement"; therefore the parties may determine by agreement the method under which arbitrators will be selected.  Avis Rent A Car Sys. Inc. v. Garage Emplys. Union, 791 F.2d 22, 25 (2d Cir. 1986).  In the arbitration agreement at issue, the Nets agreed to submit insurance disputes with Trustmark to arbitration on the express condition that it would have the right to appoint one of the arbitrators; the Nets did not consent to participate in an arbitration in which it is denied this right.  Nor did it consent to a "coordinated" or "consolidated" arbitration that denies it of that right.  The arbitration agreement specifically provides that "[e]ach party to the arbitration shall select one arbitrator" and that the number of party arbitrators is limited to two, thereby limiting the number of parties that may be joined in an arbitration.  Thus, compelling the Nets to participate in an arbitration where it is denied the contractual right to select an arbitrator by either forcing the Nets to submit to a previously selected panel or to "jointly" appoint an arbitrator, constitutes a violation of the

parties' agreed-upon method of selecting arbitrators and will result in the vacating of any award issued by such panel. See id.; Hugs & Kisses, Inc. v. Aguirre, 220 F.3d 890, 892-94 (8th Cir. 2000) (arbitration award void where plaintiff unilaterally chose the arbitrator in violation of agreement); see also 9 U.S.C.S. §§ 5, 10.

Trustmark drafted the arbitration clause, and did so in a manner that subjected it to seriatim litigation, a result Trustmark now seeks to avoid. Trustmark's argument that the Nets and 76ers are considered one "party" under the agreement and are therefore required to jointly select an arbitrator is not supported by the language of that clause. To the extent the language may be deemed ambiguous, it must be construed against Trustmark as the drafter. See Nationwide Mutual Fire Ins. Co. v. Nationwide Furniture, Inc., 932 F. Supp. 655, 656 (E.D. Pa. 1996) ("[I]f the policy language is ambiguous, it must be construed against the insurer, the drafter of the policy.") Therefore, the Court should grant the 76ers' motion to ensure that the arbitrations proceed in accordance with the provisions of the arbitration clause and that the resulting award(s) will not be vacated.

## TRUSTMARK'S ARGUMENT

### THE MOTION TO COMPEL, WHICH HAS NOT BEEN SERVED, IS IMPROPER INSOFAR AS (1) TRUSTMARK IS ARBITRATING BEFORE A TRIBUNAL CHAIRED BY FORMER THIRD CIRCUIT CHIEF JUDGE JOHN GIBBONS AND (2) THE RELIEF SOUGHT BY THE 76ERS WOULD INFRINGE UPON THE AUTHORITY OF THE ARBITRAL TRIBUNAL

As noted above, the 76ers have not yet served their Motion to Compel and therefore, any adjudication of their Motion is both premature and unduly prejudicial to Trustmark and its right to file a memorandum in opposition to the relief requested. Moreover, as also noted above, this Court lacks authority to compel arbitration outside this District.

Even were the 76ers' Motion to Compel ripe for adjudication and properly brought in this District, it is utterly meritless for two primary reasons: (i) Trustmark has not refused to arbitrate but, to the contrary, the arbitration is proceeding with a fully appointed tribunal consisting of Michael Cooper (appointed by Trustmark), Kenneth Feinberg (appointed by the 76ers) and former Third Circuit Chief Judge John Gibbons (appointed by Messrs. Cooper and Feinberg), and (ii) the breathtakingly overbroad relief sought by the 76ers (including requesting that this Court determine the sequencing of the arbitration and the manner in which it is conducted, including certain deadlines the 76ers wish to have imposed upon the tribunal and Trustmark) is nowhere found in the arbitration agreement itself and would trample upon the authority of Judge Gibbons and his fellow arbitrators to determine these issues.[9]

"[A]n action to compel arbitration under the [FAA] accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject

---

[9]      Trustmark hereby submits argument on this issue solely at the express request of the Court and thus does not waive its objection to the Court's consideration of the 76ers' Motion to Compel prior to service thereof or Trustmark's right to file a brief in opposition to that motion in accordance with the timetable established by the Federal Rules of Civil Procedure and/or the Local Rules.

matter of the dispute."[10]  A refusal only arises when a party commences litigation or fails to

comply with an arbitration body's order to arbitrate.[11]  Therefore, a party is not aggrieved and

has no standing to seek a motion to compel unless and until the opposing party has specifically

and unambiguously refused to arbitrate the subject matter of the dispute.[12]

      Trustmark has not refused to arbitrate.  In fact, Trustmark has fully complied with

all of its obligations in this arbitration and has never once protested that this subject matter is not

arbitrable.  Trustmark has appointed its party-arbitrator on a timely basis, and that arbitrator has

collaborated with the 76ers' party-arbitrator to appoint Judge Gibbons as the chair.  Trustmark

also has not commenced any litigation relating to the arbitration.  Because Trustmark has not

refused to arbitrate, the 76ers improperly seek relief under Section Four of the FAA and its

Motion must be denied.[13]

      A district court's role under the FAA is limited solely to two issues: 1) whether a

dispute falls within the scope of a valid arbitration agreement, and 2) whether a party to the

agreement has refused to arbitrate.[14]  It is beyond the district court's statutory authority to

---

[10]    Painewebber, Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995) (emphasis added).  No party may seek a motion to compel under Section 4 of the FAA unless aggrieved by another party's "failure, neglect, or refusal . . . to arbitrate." 9 U.S.C. § 4.  See also Mantaline Corp. v. PPG Industries, Inc., 54 Fed. Appx. 356, 358 (3d Cir. 2002) (not selected for publication).

[11]    Jacobs v. USA Track & Field, 374 F.3d 85, 89 (2d Cir. July 8, 2004).

[12]    See Painewebber, Inc., 61 F.3d at 1067.  See also Raytheon Co. v. Ashborn Agencies, Ltd., 372 F.3d 451, 453 (D.C. Cir. 2004) (holding that petitioner lacked constitutional standing under Section 4 of the FAA because party suffered no injury-in-fact and the arbitration could proceed ex parte).

[13]    While Trustmark and the 76ers have disagreed over Trustmark's right to file a third party demand against the Nets, that issue is one to be resolved by the tribunal itself, unless the Nets refuse to subject themselves to the jurisdiction of the tribunal even for that limited purpose, in which case Trustmark would be entitled to seek relief from the Southern District of New York.  That issue, however, cannot be decided by the Court, and certainly not before the jurisdiction of this Court over the Nets is established, and both the Nets and Trustmark have presented their respective arguments.

[14]    Jacobs, 374 F.3d at 88.

determine the minutia of how the arbitration should proceed, as that is exclusively within the jurisdiction of the arbitration body and the appointed tribunal.[15]

That the subject matter of this dispute falls with a valid arbitration agreement is not disputed, and as stated above, Trustmark has not refused to arbitrate. What the 76ers actually desire – which does not fall within either of the two categories described above – is for this Court to substitute its judgment for that of Judge Gibbons and Messrs. Cooper and Feinberg and determine the "sequencing and substance" not only of the arbitration commenced by the 76ers, but also of two other arbitrations, one brought by Trustmark against the Nets (in which the 76ers have been dropped as a party) and one commenced by the NBA against Trustmark. None of the relief requested by the 76ers is derived from the arbitration agreement. Under the guise of a "motion to compel," the relief actually sought by the 76ers from this Court includes:

- having the Court select the "preliminary issue" the arbitrators must adjudicate and ordering the arbitral tribunal to stay all other proceedings in multiple arbitrations;[16]

- having the Court order the tribunal to permit the intervention by the NBA;

- having the Court impose upon the tribunal a deadline for the tribunal's adjudication of the "preliminary issue"; and

- having the Court establish a deadline for payment by Trustmark in the event the 76ers prevail on their "preliminary issue," without regard for any timetable the tribunal may believe appropriate.

The 76ers' requested relief goes so far beyond the bounds of this, or any, Court's authority in usurping the fundamental jurisdiction of the arbitral tribunal that if any party deserves an award of costs in connection with this lawsuit (another request of the 76ers), it is Trustmark for having

---

[15]    See Id., 374 F.3d at 89 ("petitioner cannot use Section 4 as a vehicle to seek review of the AAA's decision about how to proceed with the arbitration process.").
[16]    Trustmark disagrees that the "preliminary issue" selected by the 76ers is a preliminary issue or ought to be adjudicated before others.

been dragged into federal litigation notwithstanding its underline eagerness to arbitrate this dispute and active participation in that arbitration.  The 76ers' lawsuit and its so-called Motion to Compel do not even pass muster under Rule 11 of the Federal Rules of Civil Procedure, and Trustmark would have written a letter informing the 76ers of such and demanding the withdrawal of its motion had it ever been served.[17]

Plainly put, the Motion to Compel must be denied with costs awarded to Trustmark.

---

[17]    The impropriety of the 76ers' Motion to Compel is perhaps best underscored by the 76ers' outright refusal to include a list of the three motions in the introductory paragraph of this submission because it would not permit its motion to be characterized as a "Motion to Compel Arbitration (9 U.S.C. § 4)" notwithstanding that that is the title that the 76ers chose for its motion, for its memoradum of law and for its proposed order.  Thus, at the 76ers' insistence, the titles of all three motions were deleted.

Respectfully submitted:


COZEN O'CONNOR                                    WILLKIE FARR & GALLAGHER LLP


By: _____                    By: _____
    Stephen A. Cozen                                 Robert J. Kheel
    Robert W. Hayes                                  787 Seventh Avenue
    Lawrence D. Jackson                              New York, NY 10019-6099
    1900 Market Street                               (212) 728-8000
    Philadelphia, PA 19103
    (215) 665-2000

    Attorneys for Plaintiff,                         Attorneys for defendant,
    Philadelphia 76ers L.P.                          New Jersey Nets Basketball LLC

DRINKER BIDDLE & REATH LLP


By: _____
    Stephen C. Baker
    Stephen Harris
    One Logan Square
    18th & Cherry Streets
    Philadelphia, PA 19103-2700
    (215) 988-2700

CLEARY, GOTTLIEB, STEEN & HAMILTON
    Jeffery A. Rosenthal
    One Liberty Plaza
    New York, NY 10006
    (212) 225-2000

    Attorneys for defendant,
    Trustmark Insurance Company