## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA 76ERS L.P.,     : | Civil Action No. 04-CV-4972 |
|       : | |
|     Plaintiff,     : | |
|       : | |
|     v.     : | |
|       : | |
| TRUST MARK INSURANCE COMPANY, and     : | |
| NEW JERSEY NETS BASKETBALL LLC,     : | |
|       : | |
|     Defendants.     : | |
|       : | |

### SUPPLEMENTAL MEMORANDUM OF LAW OF PLAINTIFF PHILADELPHIA 76ERS L.P. IN OPPOSITION TO DEFENDANT TRUSTMARK INSURANCE COMPANY'S MOTION TO DISMISS OR TRANSFER VENUE

### PRELIMINARY STATEMENT

In accordance with the Court's direction at oral argument to file a joint submission by December 10, 2004 on the issue of whether there is any **evidence of record** that plaintiff, Philadelphia 76ers L.P. (the "76ers"), and defendant, Trustmark's Insurance Company ("Trustmark"), have disagreed on where the arbitration should be held (Transcript of Argument, pp. 35-39), and in light of Trustmark's refusal to comply with this direction and to cooperate in preparing a joint submission, the 76ers respectfully submit this Supplemental Memorandum of Law on the issue the Court directed the parties to address. The only record evidence on this issue is that which the 76ers submitted: (i) the parties' arbitration agreement required them to negotiate in good faith to select a forum for the arbitration; (ii) they agreed to defer discussion of the place of arbitration until after a panel is appointed; and (iii) those discussions have not taken place because a panel has yet to be finally confirmed. There has simply been no disagreement as to the place for the arbitration.

## ARGUMENT

The arbitration provision set forth in the Certificate of Insurance under which the 76ers have submitted its claim, a copy of which is attached hereto and marked Exhibit "A," requires that any dispute arising between the policy holder, the NBA or any NBA Club, on the one part, and Trustmark or its broker, on the other part, shall be submitted to binding arbitration before the American Arbitration Association ("AAA"). The Certificate of Insurance adopts the AAA's Commercial Arbitration Rules with two key exceptions, which are the selection of the arbitration panel and, of primary significance here, the place of arbitration. As to the place of arbitration, the Certificate of Insurance provides that:

> Arbitration shall be held in a location agreed to by the parties. If no location can be agreed upon, arbitration shall be held at the then current main corporate office of the American Arbitration Association. If the American Arbitration Association is not in existence or its offices unavailable, arbitration shall be held at Our home office.

As is set forth in the 76ers' Memorandum of Law in Opposition to Trustmark's Motion to Dismiss or Transfer Venue (p. 11), this provision imposes an obligation to negotiate and select an appropriate location for the arbitration in good faith. *Trustmark Ins. Co. v. Fire & Casualty Ins. Co. of Connecticut*, No. 02 C 0934, 2002 U.S. Dist. LEXIS 7923, * 2 (N.D. Ill. May 1, 2002).

There was no mention of the selection of the place of arbitration until the first administrative conference call in which the 76ers and Trustmark participated with Linda Beyea, the AAA Supervising Case Manager, on October 7, 2004. This conference call occurred before it became necessary for the 76ers to seek Court relief and any issue as to the venue for any such proceedings arose. During this conference call, the 76ers and Trustmark agreed that discussion of the place of arbitration will take place after the panel is appointed. This agreement is memorialized in the October 8, 2004 letter from Ms. Beyea summarizing the substance of the

parties' discussion. (For the convenience of the Court, another copy of this letter is attached hereto as Exhibit "B.") Trustmark cannot seriously dispute the accuracy of Ms. Beyea's summary because, as a neutral AAA Case Manager, she obviously took care to accurately summarize the parties' discussions and would have no reason to misstate them. Consistent with this agreement, the 76ers and Trustmark have not since discussed where the arbitration will be held.

A panel has not even been confirmed in the 76ers' arbitration proceeding. There was a delay in selecting the Chairman because Trustmark objected to the person the party appointed arbitrators initially selected on the basis of a purported conflict. Judge Gibbons was only proposed as the Chairman within the last two weeks. While both parties communicated that Judge Gibbons was acceptable, they were just provided his conflicts disclosures in a December 9, 2004 letter from Linda Beyea, a copy of which is attached hereto and marked Exhibit "C." As is also confirmed in Ms. Beyea's letter, the AAA appointed Judge Gibbons as the Chairman on December 9 and the parties have until December 14 to assert any objections based upon his disclosures. As such, there is still no constituted panel and there could not have been any discussions with the panel about the situs of the arbitration consistent with the parties' agreement to defer any such discussions until after the panel is appointed.

In correspondence to the arbitration panel after oral argument, Trustmark claimed that it selected New York as the place of arbitration in filing a Third-Party Demand against the Nets. This Demand is not part of the evidence before the Court, is a nullity as there is no basis for third-party practice under the AAA's Rules, does not constitute a good faith discussion with the 76ers of where to hold the arbitration and cannot change the fact that Trustmark agreed to postpone the selection of the place of arbitration until after the panel is constituted. Moreover, the parties were already at odds over Trustmark's refusal to arbitrate in accordance with the

Certificate of Insurance by the time Trustmark filed its Third-Party Demand. Trustmark's litigation motivated efforts to create a dispute as to the place of arbitration are irrelevant and should never be the basis upon which the Court transfers venue.

At oral argument, the Court stated that "my reaction at this point is this record doesn't support the contention that there has been a disagreement" (Transcript, p. 35), but to give Trustmark every opportunity to be heard afforded it an opportunity to identify any evidence in the record of an actual dispute between Trustmark and the 76ers as to where the arbitration will be held. ("And, what I am interested in is your respective contentions as to what's in the record before me here.") (Transcript, p. 39.) (A copy of pages 35-39 of the Transcript are attached hereto and marked Exhibit "D") The relevant inquiry, therefore, is whether there is any record evidence of a dispute as to the situs of the arbitration as of the date this action was commenced. There is simply no such evidence.

Moreover, it is abundantly clear that there never would be any good faith dispute over the forum for the arbitration because of an actual, as opposed to litigation motivated, desire by Trustmark to hold the hearings in New York City. Trustmark's offices are in Chicago and New York would not be any more convenient for its witnesses than, for instance, Philadelphia, where the 76ers are located, or New Jersey. The party appointed arbitrators are from Washington, D.C. and New York and would likely prefer a location between Washington and New York so that every arbitrator could travel to the hearings each day without being required to stay over night. It is incomprehensible that Trustmark would risk alienating the panel by refusing a suggestion by the arbitrators of this nature.

## CONCLUSION

The Court should not transfer venue over this matter and, instead, should enter on the merits the proposed Order submitted by the 76ers, except that, as recent events have

demonstrated the lengths to which Trustmark will go to disrupt the proceedings, it should retain

jurisdiction to grant any further relief that may be necessary to enforce the order the 76ers

propose.  A revised form of Order that includes this provision has been filed herewith.

Respectfully submitted:

COZEN O'CONNOR

By: _____
Stephen A. Cozen
Robert W. Hayes
Lawrence D. Jackson
1900 Market Street
Philadelphia, PA 19103
(215) 665-5530

Attorneys for Claimant,
Philadelphia 76ers L.P.

December  10, 2004

# EXHIBIT A

**TRUSTMARK INSURANCE COMPANY**
**400 Field Drive**
**Lake Forest, Illinois 60045**
**(847) 615-1500**
**("We, Us and Our")**

This is the Certificate of Insurance ("Certificate") while the Master Policy ("Policy") is in force. It explains the rights and benefits that are determined by the Policy. The Policy is a contract between the Policyholder and Us. The Policyholder is the National Basketball Association Trust.

The Policy, together with the Certificate attached thereto and any amendments or riders thereto, constitutes the agreement under which benefit payments are made. We will pay the benefits set forth in the Policy. Benefit payment is governed by all of the terms, exclusions, limitations and conditions of the Policy. The Policy may be amended by written agreement between the NBA and Us without the consent of or notice to the Club, any Insured Player or beneficiary. Any such amendment will not affect any benefit due before the amendment takes effect.

The Policy is administered by BWD Group LLC ("BWD"), Sports, Entertainment & Special Risks Group, BWD Plaza, P.O. Box 9050, Jericho, New York, 11753-8950. A copy of the Policy is kept at BWD. It may be inspected by any Club, Insured Player or beneficiary during normal business hours. We reserve the right to delegate such duties and responsibilities of Ours to BWD, as administrator, as agreed upon by the NBA, BWD and Us.

This Certificate automatically supersedes any other Certificate We have previously issued to the Club or any Insured Player.

**Please read this Certificate carefully.**

**TRUSTMARK INSURANCE COMPANY**


J. Grover Thomas, Jr.
President & Chief Executive Officer                Frank G. Gramm
                                                    Corporate Secretary

G446-23

-2-

## SCHEDULE

| | |
|---|---|
| **POLICY NUMBER:** | NBA 01 |
| **CERTIFICATE NUMBER:** | 1001-1664 |
| **SCHEDULE DATE:** | March 19, 2002 |
| **CLUB:** | New Jersey Nets |
| **BENEFICIARY:** | New Jersey Nets |
| **INSURED PLAYER:** | Todd MacCulloch |
| **COVERAGE EFFECTIVE DATE:** | 12:01 a.m. September 4, 2001 |
| **COVERAGE PERIOD:** | From: 12:01 a.m. September 4, 2001<br>To:    12:01 a.m. May 1, 2007 |
| **ELIMINATION PERIOD:** | 41 Regular Season Games |

**COVERED SALARY*:**

| For Policy Year Beginning: | Covered Salary is: | Per Game Benefit is: |
|---|---|---|
| September 1, 2001 | $4,538,000.00 | $44,273.17 |
| September 1, 2002 | $4,991,800.00 | $48,700.49 |
| September 1, 2003 | $5,445,600.00 | $53,127.80 |
| September 1, 2004 | $5,899,400.00 | $57,555.12 |
| September 1, 2005 | $6,353,200.00 | $61,982.44 |
| September 1, 2006 | $6,807,000.00 | $66,409.76 |

**CONTRIBUTION DUE*:**

| For Policy Year Beginning: | Contribution is: |
|---|---|
| September 4, 2001 | $230,247.80 (Includes $53,265.80 surcharge for 2006/07 coverage) |
| September 1, 2002 | $194,680.20 |
| September 1, 2003 | $212,378.40 |
| September 1, 2004 | $230,076.60 |
| September 1, 2005 | $247,774.80 |
| September 1, 2006 | $ 79,641.90** |

\* Covered Salary, Per Game Benefit and Contributions are subject to adjustment pursuant to the terms and conditions of the Policy. Contributions after the Policy Year of Issue are subject to adjustment by Us. This Schedule replaces any previously dated Schedule.

\*\* The Contribution for the final season of coverage reflects a 70% discount, which will not apply if coverage is cancelled or a claim is pending in the final season, or if coverage is extended to include future seasons.

# TABLE OF CONTENTS

**Begins on Page**

**Schedule of Benefits**                                      2

**Definitions**                                              4
>   Club
>   Coverage Period
>   Covered Salary
>   Elimination Period
>   Employment Contract
>   Injury
>   Insured Player
>   Maximum Benefit Period
>   NBA
>   Period of Disability
>   Physician
>   Player
>   Policy Year
>   Presumptive Disability\Presumptively Disabled
>   Regular Season Game(s)
>   Salary
>   Sickness
>   Temporary Total Disability\Temporarily Totally Disabled

**Benefit Provisions**                                       6
>   Temporary Total Disability Benefits
>   Elimination Period
>   Recurrent Disability
>   Concurrent Disability
>   Rehabilitation Benefits
>   Benefit Commutation
>   Salary Commutation

**Exclusions, Limitations and Termination**                  8
>   Exclusions
>   Limitations
>   Termination

**Claim Provisions**                                         9
>   Notice of Injury or Sickness
>   Notice of Claim; Claim Forms; Proof of Disability

Payment of Claims; Assignment
Application Statements
Payment Error
Fraudulent Claim Submission
Medical Records and Examination
Claim Appeal
Legal Actions
Arbitration

## DEFINITIONS

**Club:** One of the current 29 professional basketball teams in the National Basketball Association or an expansion team added to the National Basketball Association while the Policy is in force.

**Coverage Period:** The period of time during which an Insured Player is covered for Temporary Total Disability as shown on the Schedule.

**Covered Salary:** The Salary which the Company has approved for coverage, as shown on the Schedule.

**Elimination Period:** The number of Regular Season Games that an Insured Player must miss during a Period of Disability before any benefits are payable. The Elimination Period is shown on the Schedule.

**Employment Contract:** A binding contract of employment between a Club and an individual which: (a) requires the individual to perform the duties of a professional basketball player in the National Basketball Association; and (b) includes guaranteed compensation during Temporary Total Disability.

**Injury:** Accidental bodily damage sustained by an Insured Player during the Coverage Period which is not specifically excluded from coverage.

**Insured Player:** A Player: (a) who has an Employment Contract with a Club; (b) on whose behalf the Club has made application for Temporary Total Disability coverage which is approved by Us; and (c) whose coverage is in force under this Certificate.

**Maximum Benefit Period:** At any point in time, the number of Regular Season Games which remain for the Club during the Insured Player's Coverage Period, subject to the Elimination Period.

**NBA:** National Basketball Association.

G448-23                                           4

**Period of Disability:** The period of time during which an Insured Player has a Temporary Total Disability resulting from a single cause or related causes.

**Physician:** A licensed medical doctor, surgeon or dentist practicing within the scope of such license other than: (a) any Club owner or employee, except the designated team Physician; (b) any Player's spouse; or (c) the parent, grandparent, child or sibling of any Player or Player's spouse.

**Player:** An individual who plays professional basketball for a Club.

**Policy Year:** The 12-month period beginning on the Effective Date of the Policy and each Policy anniversary date thereafter. The first Policy Year for an Insured Player shall begin on his Coverage Effective Date and end on the immediately subsequent Policy anniversary date.

**Presumptive Disability\Presumptively Disabled:** Any of the following conditions when certified as total, permanent and irrecoverable by a Physician:

1.    Loss of sight in both eyes;
2.    Loss of the use of one hand or one foot;
3.    Quadriplegia; or
4.    Paraplegia.

**Regular Season Game(s):** All games during a Policy Year designated by the NBA as regular season play for the Club.

**Salary:** A Player's current and deferred compensation which is guaranteed under his Employment Contract for Injury and/or Sickness. Additional guaranteed compensation, including but not limited to a signing bonus, may be amortized and included in Covered Salary with Our prior approval. Compensation that is not guaranteed, including but not limited to a performance bonus, is excluded from Covered Salary. Any compensation which becomes guaranteed when earned may then be included in Covered Salary in the season in which it is paid with Our prior written approval.

**Sickness:** Illness or disease sustained by an Insured Player during the Coverage Period which is not specifically excluded from coverage.

**Temporary Total Disability\Temporarily Totally Disabled:** The inability of an Insured Player to perform the duties of a professional basketball player in the NBA which:

1.    is due to Injury or Sickness; and
2.    is certified by a Physician.

G446-23                                       5

## BENEFIT PROVISIONS

**Temporary Total Disability Benefits:** Benefits are payable for each Regular Season Game in which an Insured Player is unable to participate due to a Temporary Total Disability. This includes any Regular Season Game which is suspended or canceled, if the Club continues the Insured Player's Covered Salary. Benefits are subject to:

1. Satisfaction of the Elimination Period by such Insured Player;
2. Definitions, limitations, exclusions and other terms of the Policy;
3. The Club's continuation of the Insured Player's Salary pursuant to the terms of the Employment Contract; and
4. The maximum Per Game Benefit and the Maximum Benefit Period.

An Insured Player must be under the regular care of the Physician who certifies in writing the Insured Player's Temporary Total Disability, unless regular care is not necessary due to the nature of such Temporary Total Disability.

Per Game Benefits are payable following the satisfaction of the Elimination Period in the amounts indicated on the Schedule and shall be limited to the lesser of:

a. The maximum Per Game Benefit as indicated in the Policy;
b. Eighty (80) percent of the Insured Player's per game Salary; or
c. Seventy (70) percent of the Insured Player's per game Salary, if the Insured Player is the designated beneficiary.

The per game Salary for any Policy Year shall equal the Covered Salary for that Policy Year divided by the number of Regular Season Games in that Policy Year. Any increase or decrease in Salary during the Policy Year must be approved by Us for determining the per game Covered Salary. We also reserve the right to decrease the amount of the per game Salary with retroactive effect to coincide with changes to the Employment Contract should a Club decrease an Insured Player's Salary for any Policy Year and not seek Our approval in determining the new per game Covered Salary.

Benefits are payable for Temporary Total Disability resulting from activities specifically excluded by the Employment Contract, for so long as the Club continues the Insured Player's Salary during the Period of Disability. No benefits shall be paid after the end of the Maximum Benefit Period.

Benefits are payable to the Club unless otherwise assigned by Club or another beneficiary is designated on the Schedule.

**Elimination Period:** The Elimination Period must be satisfied within 164 consecutive Regular Season Games and does not include any Regular Season Game which is suspended or canceled, unless the Club continues the Insured Player's Salary. A separate Elimination Period must be met for each Period of Disability.

G446-23                                          8

**Recurrent Disability:** If after a Period of Disability, the Insured Player is released by the Physician to return to full-time play for at least 41 Regular Season Games, any subsequent disability will be considered a new Period of Disability and subject to a new Elimination Period.

If after release by the Physician, the Insured Player does not return to full-time play for at least 41 Regular Season Games, any subsequent disability will be considered part of a prior Period of Disability and not subject to a new Elimination Period; unless, the subsequent disability is the result of:

a.  An Injury to a different part of the Insured Player's body; or
b.  A Sickness due to a cause entirely different from the cause of the prior Period of Disability;

then the subsequent disability will be considered a new Period of Disability and subject to a new Elimination Period.

**Concurrent Disability:** Concurrent periods of Temporary Total Disability that are due to Injuries or Sicknesses that result from unrelated causes shall constitute separate Periods of Disability subject to separate Elimination Periods.

The regular season Per Game Benefit shall be paid only once for each Regular Season Game for which benefits are payable, regardless of the number of causes of Temporary Total Disability.

**Rehabilitation Benefits:** Club may request a period of rehabilitation after a Period of Disability for which benefits have been paid. A Physician must release the Insured Player from Temporary Total Disability to return to the duties of a professional basketball player in the NBA.

Rehabilitation benefits are payable at Our sole discretion. If approved, benefits may be continued for only the first six (6) consecutive Regular Season Games following the Physician's release of the Insured Player from Temporary Total Disability. The Insured Player must record no more than eight (8) minutes of official playing time in each Regular Season Game during rehabilitation.

Rehabilitation benefits and participation limits shall be determined independently for each game. Rehabilitation benefits shall be paid only once for the same disability in the same Policy Year.

G446-23                                    7

**Benefit Commutation:**  Temporary Total Disability benefits may be commuted to a present value lump sum if:

a.    The Insured Player is Presumptively Disabled; or

b.    A Physician has certified that the Insured Player is otherwise permanently disabled and will never again be able to perform the duties of a professional basketball player in the NBA.

Commuted benefits, if approved by Us, shall be paid as full settlement of any remaining benefits.  The present value discount factor shall be agreed upon by Club and Us.  Future regular care by a Physician is not required upon payment of approved commuted benefits.

**Salary Commutation:**  A Temporarily Totally Disabled Insured Player's Salary may be commuted to a present value lump sum by a Club.  Benefits shall continue to be payable as if the Salary had not been commuted.  The Club shall be considered as obligated to continue the Insured Player's Salary for the remainder of the Period of Disability.

## EXCLUSIONS, LIMITATIONS and TERMINATION

**Exclusions:**  No benefits are payable for any Insured Player's Temporary Total Disability caused by, resulting from or in connection with:

1.    Participation by the Insured Player in any activity excluded in the Employment Contract, unless the Club continues to pay the Insured Player's Salary.

2.    Any condition or activity specifically excluded from coverage by endorsement or rider.

3.    Commission of a criminal act which results in the Insured Player's conviction of an offense which is punishable by imprisonment for more than one year.  This shall not include any conviction or offense arising from the operation of a motor vehicle.

4.    The Insured Player being under the influence of any drug or narcotic which is not lawfully available, unless administered as prescribed or advised by a Physician for a medical condition other than drug addiction.

5.    Self-destruction or attempted self-destruction or intentional self-inflicted Injury or Sickness, by the Insured Player while sane.

**Limitations:** Except for benefits accumulated as due but unpaid, no benefits will be paid or continued:

G446-23                                     8

1.  On or after the date the Insured Player dies;

2.  On or after the date the Insured Player is released by a Physician to return to play professional basketball in the NBA, except for approved rehabilitation benefits or in accordance with the Recurrent Disability provision herein;

3.  During any Elimination Period; or

4.  For any Injury or Sickness first occurring or manifesting after termination of coverage with Us, subject to the termination provision of the Policy.

Termination: Coverage for any Insured Player will end on the earliest of:

1.  The date the Policy is terminated, subject to any elected runoff period.

2.  The end of the Coverage Period.

3.  The termination of the Employment Contract between the Club and the Insured Player. Such termination shall not apply if:

    a.  A successor Employment Contract is concurrently executed and accepted by Us; or

    b.  The Insured Player is traded to another Club. Coverage, to the extent provided on the date of the trade, shall be transferred to the new Club.

4.  The date the Certificate is canceled by the Club.

Termination of coverage shall not affect any benefit which accrued while coverage was in effect.

## CLAIM PROVISIONS

**Notice of Injury or Sickness:** Written notice of any Injury to or Sickness of an Insured Player must be provided to Us within 20 calendar days of such Injury or Sickness being reasonably expected to result in a claim for benefits. A claim for benefits will not be denied or reduced if notice is given after such time period but as soon as is reasonably possible.

**Notice of Claim; Claim Forms; Proof of Disability:** When the notice of Injury or Sickness is received, forms for filing a proof of disability will be sent to the Club. If these forms are not sent within 15 days, the proof of disability requirement will be considered met by giving Us a written statement of the nature and extent of the Injury or Sickness within the proof of disability time limit.

G448-23

9

Written proof of disability must be completed and returned to Us within 90 days of a Temporary Total Disability or as soon thereafter as reasonably possible. Except for absence of legal capacity, no claim for benefits will be accepted after one year from the date of the Temporary Total Disability.

Written proof of disability shall include medical reports, Physician's statements, operative reports and any other supporting documentation related to the diagnosis and treatment of the Injury or Sickness as determined by Us.

Subsequent proof of disability, as determined to be satisfactory by Us, shall be required on no less than a monthly basis while an Insured Player is Temporarily Totally Disabled and receiving benefits. We will determine, based on the nature of the Temporary Total Disability, when subsequent proof of disability is no longer necessary.

**Payment of Claims; Assignment:** Benefits will be paid no later than 60 days following the end of a month of Temporary Total Disability for which benefits are payable and all required proof of disability has been received. Benefits shall be paid to the Club unless otherwise assigned to the Insured Player or other beneficiary. Any assignment of benefits must be in writing and approved by Us prior to the date of payment. Payment of benefits will discharge Us from all liability to Policyholder, the NBA, the Club, Insured Player or any assignee or other beneficiary. Benefits, to the extent permitted by law, shall be exempt from attachment or claims of creditors of Policyholder, the NBA or the Club.

**Application Statements:** All statements made in any application, in the absence of fraud, shall be deemed representations and not warranties. No statement made in any application or knowledge by any Club or Player shall be imputed to any other Club or Player. No statement will be used to contest the validity of any Insured Player's coverage or reduce benefits unless: (a) it is in writing and signed by Policyholder, the NBA, any Club or Player; and (b) a copy is furnished to Policyholder, the NBA or Club.

After an Insured Player's coverage has been in effect for two (2) years, during the lifetime of that person, only fraudulent misstatements in an application may be used to void coverage or deny any claim. Any increase in coverage will begin a new two (2) year contestable period for such increase.

**Payment Error:** Any benefit paid in error may be recovered from the Club or designated beneficiary receiving the incorrect payment. At Our option, We may offset the overpayment against future benefit payments due the Club having received, or whose designated beneficiary received, such benefits. The acceptance of Premium or paying other benefits shall not constitute a waiver of Our rights under this section. Recovery or offset shall be in addition to any other remedies available to Us at law or in equity.

**Fraudulent Claim Submission:** If any Club or Insured Player knowingly submits or participates in the submission of a claim for benefits which contains false or misleading information that would have the effect of: (a) increasing the benefit payable; or (b) paying a benefit not otherwise payable, We shall have the right to rescind that Insured Player's coverage to the date the fraud was perpetrated. Such rescission is without prejudice to any other right or remedy available to Us at law or in equity.

**Medical Records and Examination:** With written authorization, We may obtain an Insured Player's medical records. We have the right, at Our expense, to have an Insured Player examined as often as reasonably necessary while a claim on that Insured Player is pending or during the course of a claim.

**Claim Appeal:** If any claim for benefits is denied, in whole or in part, Club shall be notified in writing. Such denial shall include:

a.    The specific reason for the denial;
b.    The Policy provision upon which the denial is made; and
c.    An explanation of the claim appeals process; or
d.    Any additional information or documentation which may be required to perfect a claim with an explanation of why it is needed.

The Club may request an appeal of a claim denial by submitting: (a) a written request for appeal within 180 days of receiving the claim denial; (b) any supporting documentation; and (c) any issues or comments, in writing. The Club may review any documents pertinent to the claim denial, subject to any privacy restrictions. A decision will be made by Us no later than 30 days after receipt of the appeal request and all supporting documentation, except in special circumstances a decision will be made by Us within 90 days of such receipt.

**Legal Actions:** No legal action for benefits may be brought against Us within 60 days after written proof of disability has been sent to Us. No such action may be brought more than three (3) years from the time written proof of disability is required to be given. All legal actions, whatever the nature, are subject to: (a) full compliance with all terms, exclusions, limitations and conditions of the Policy as a condition precedent; and (b) arbitration.

**Arbitration:** Any dispute arising from the contract between the Policyholder, the NBA or any Club on one hand and BWD or Us on the other hand, shall be submitted to binding arbitration. The Commercial Arbitration Rules of the American Arbitration Association shall apply, except with respect to selection of the arbitration panel and location.

Each party to the arbitration shall select one arbitrator. A third independent arbitrator shall be selected by the first two arbitrators. Arbitration shall be held in a location agreed to by the parties. If no location can be agreed upon, arbitration shall be held at the then

current main corporate office of the American Arbitration Association. If the American Arbitration Association is not in existence or its offices unavailable, arbitration shall be held at Our home office.

The costs of arbitration shall be borne equally by all of the parties thereto.

G446-23



**INSURANCE COMPANY**

**Endorsement No. 1**

Attaching to and forming part of Policy No. NBA01/Certificate No. 1001-1664

Issued to:    **Philadelphia 76ers**
**Todd MacCulloch**

It is hereby noted and agreed that

with effect from 12:01 a.m. September 1, 2002, the Contribution Installments due under the above Certificate are amended as follows:

| For Policy Year Beginning: | Covered Salary: | Contribution: | Due Date: |
|---|---|---|---|
| September 1, 2002 | $4,991,800.00 | $262,069.50 | September 1, 2002 |
| September 1, 2003 | $5,445,600.00 | $326,736.00 | September 1, 2003 |
| September 1, 2004 | $5,899,400.00 | $353,964.00 | September 1, 2004 |
| September 1, 2005 | $6,353,200.00 | $381,192.00 | September 1, 2005 |
| September 1, 2006 | $6,807,000.00 | $122,526.00* | September 1, 2006 |

\* The Contribution for the final season of coverage reflects a 70% discount, which will not apply if coverage is canceled or a claim is paid or pending in the final season, or if coverage is extended to include future seasons.

Covered Salary, Per Game Benefit and Contribution amounts are subject to adjustment pursuant to the terms and conditions of the Policy.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Additional Contribution:    NIL

Contribution Credit:    NIL

Effective Date:    September 1, 2002

Date of Issue:    May 4, 2004

(516) 327-2700
(516) 327-2900 FAX

**BWD Group LLC**
*A Multiple Series Limited Liability Company*

Trustmark Insurance Company

By: _____
Corporate Secretary

BWD Plaza, P.O. Box 9058, Jericho, New York 11753-8950

EXHIBIT B

American Arbitration Association
*Dispute Resolution Services Worldwide*

Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents
950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

October 8, 2004

**VIA FACSIMILE**
Stephen A. Cozen, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton
1 Liberty Plaza
New York, NY 10006

Re: 14 195 Y 01711 04
　　Philadelphia 76ers, L.P.
　　and
　　Trust Mark Insurance Company

Dear Counsel:

This will acknowledge receipt of Respondent's Answer from Mr. Rosenthal, a copy of which we note was exchanged with Mr. Cozen.

This will confirm a conference call with Mr. Cozen, Mr. Hayes, Mr. Rosenthal, Mr. Mathews, and the undersigned was held on October 7, 2004 and the following items were discussed:

- At this time the parties are not in agreement to consolidate this matter with the Demand filed by Trust Mark Insurance against Philadelphia 76ers and New Jersey Nets Basketball.

- The parties agreed that the locale of the hearing in the above referenced matter will be determined after the panel has been appointed.

- The Association has received the checklist for conflicts from both parties.

- This will confirm the parties have agreed the party appointed arbitrators shall be non-neutral. We ask the parties to confirm this agreement in writing on or before <u>October 18, 2004.</u> Absent written agreement, the party appointed arbitrators shall serve as neutral arbitrators and be subject to impartiality standards in accordance with the Rules.

- Please be advised the Association does not collect deposits for party appointed arbitrators. The parties have agreed that in accordance with their agreement, the costs of the arbitration will be borne equally <u>except</u> each party shall be responsible for its own party appointed arbitrator's compensation and expenses in full.

- In accordance with the parties' agreement, the party appointed arbitrators will select the third neutral arbitrator. The party appointed arbitrators shall advise the Association of

their selection on or before <u>October 25, 2004</u>. The parties have agreed that if the party appointed arbitrators are unable to agree upon the third arbitrator, the parties will agree to a process for selection of the third arbitrator.

Upon appointment of the third arbitrator a preliminary hearing will be set.

The Association will require advance deposits for the neutral arbitrator once the arbitrator has been appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

The Association will make maximum use of fax machines when communicating in writing, and request that the parties do the same.

We request the parties not send copies of documents being exchanged between the parties to the Association, such as discovery, unless they are being referred to the arbitrator for a determination. These documents will be returned to you if we receive them.

If you need to extend any deadline during the course of these proceedings, please try to obtain the other party's agreement prior to contacting the Association. Untimely filings will not be considered by the Association.

This case will be administered by facilitating the exchange of appropriate written documents through the Association. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator. Correspondence should be submitted to the undersigned for transmittal to the arbitrator, copying the other party.

For your convenience, you may charge the administrative fee and deposit for arbitrator fees and expenses to your credit card. If you desire to do so, please complete the enclosed charge authorization and return it to us.

Mediation is available to the parties throughout the process of the arbitration. In addition to local mediators, the Association has a select group of mediators that serve on the Association's President's Panel of Mediators. Having already filed for arbitration, there is no additional administrative fee for this service. The compensation of the mediator will be based on the number of hours reported by the mediator. If at any point you would like to mediate please contact the undersigned.

Please do not hesitate to contact the undersigned should you have a question.

Sincerely,

Linda L. Beyea
Supervisor
401 431 4725
Beyeal@adr.org

Encl.

EXHIBIT C

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents
950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: December 9, 2004

To
Stephen A. Cozen, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton
1 Liberty Plaza
New York, NY  10006

Fax Number:       215-665-3701
                  212-225-3999

From: Linda L. Beyea

Number of Pages: (including cover) 9

Re: 14 195 Y 01711 04
    Philadelphia 76ers, L.P.
    and
    Trustmark Insurance Company

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents
950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

December 9, 2004

<u>VIA FACSIMILE</u>
Stephen A. Cozen, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton
1 Liberty Plaza
New York, NY 10006

Re: 14 195 Y 01711 04
    Philadelphia 76ers, L.P.
    and
    Trustmark Insurance Company

Dear Counsel:

This will acknowledge receipt of a letter dated December 8, 2004, from Mr. Kheel, a copy of which we note was exchanged with the parties.

This will advise the parties that the Association has appointed Hon. John J. Gibbons to serve as arbitrator in the above-captioned matter. Judge Gibbons made the enclosed disclosures.

Please advise the Association of any objections to the appointment of Judge Gibbons on or before December 14, 2004, copying the other side. The arbitrator shall not be copied on any comments related to the disclosures.

If any objections are raised, the other party will be asked to respond. The AAA will make a determination regarding the arbitrator's service, in accordance with the Rules.

For the purpose of scheduling a preliminary hearing, we are enclosing conference call calendars for the weeks of December 13, 2004 and December 20, 2004. We ask you to mark out the dates and times you are not available for a conference call and return it to us via fax on or before December 14, 2004. If a response is not received by the Association by that date, we will assume all dates and times are acceptable and a preliminary hearing will be set.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Linda L. Beyea
Supervisor
401 431 4725
Beyeal@adr.org

Encl.

cc:     Kenneth R. Feinberg, Esq.
        Michael A. Cooper, Esq.
        HON John J. Gibbons

In the Matter of Arbitration Between:

Re: 14 195 Y 01711 04
    Philadelphia 76ers, L.P.
    and
    Trustmark Insurance Company

## NOTICE OF APPOINTMENT

To:   HON John J. Gibbons

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. If any additional direct or indirect contact arises during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. The AAA will call the facts to the attention of the parties' counsel.

If you are able to accept this responsibility as Arbitrator, please sign and return this form to the AAA.

☒   I HAVE NOTHING TO DISCLOSE.

☐   SEE DISCLOSURE DATED   _____

☐   I HEREBY DISCLOSE THE FOLLOWING: (attach additional sheets if necessary, but please type – do not hand write – your disclosures below or provide them in a typed letter which can be forwarded to the parties).

☐   MY DISCLOSURE WILL IN NO WAY PREVENT ME FROM FAIRLY AND IMPARTIALLY DISCHARGING MY DUTIES AS ARBITRATOR IN THE ABOVE-REFERENCED MATTER.

## THE ARBITRATOR'S OATH

State of  **New Jersey**   } SS:

County of  **Essex**

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

    I attest that the panel biography provided by the American Arbitration Association is accurate and complete.

Dated:  **12/6/08**    Signed:  _John J. Gibbons_

Sworn before me this  6th day of  **December**  2004

                                 _Marie J. Prada_

MARIE E. PRADA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Sept. 21, 2008

|  | YES | NO |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding to any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |
| 9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? | ☑ | ☐ |
| 10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? | ☐ | ☑ |
| 11. Have you ever sued or been sued by either party or its representative? | ☐ | ☑ |
| 12. Do you or your spouse own stock in any of the companies involved in this arbitration? | ☐ | ☑ |

*If you answered 'Yes' to any of the above questions, please provide detailed information on a separate document.

# PHILADELPHIA 76ers, L.P.
## and
# TRUSTMARK INSURANCE COMPANY
## AAA NO. 14 195 Y 01711 04

Question No. 9

I have been an arbitrator in a case in which Cozen O'Connor represented a party, ▄▄▄▄▄▄▄▄ Lawrence D. Jackson did not appear in the case which is now concluded.

_John J. Gibbons_

John J. Gibbons

**Sent:**  Thursday, December 0=, 2004 12:18 PM

**To:**  · Linda L. Beyea

**Subject:** Philadelphia 76ers and Trustmark Insurance Co. - No. 14 195 Y 01711 04

Dear Ms. Beyea,

   · This is to report that on behalf of the panel I asked Mr. James Matthews of Cleary, Gottlieb, Styeen & Hamilton to arrange for a conference call among counsel and the panel members on Monday, December 13, 2004 at 10:00 AM. This was the only communication with Mr. Matthews. You have advised me that there are now three pending AAA cases, and that neutrals have been named in only two. I understand that you will advise the parties that this conference call is premature, and that future conference calls or hearings will be arranged by AAA.

                    John J. Gibbons

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration betw

Re: 14 195 Y 01711 04
    Philadelphia 76ers, L.P.
    and
    Trustmark Insurance Company

## PRELIMINARY HEARING CALENDAR FORM

Please cross out any unavailable periods of time for the week of December 13, 2004:

|  |  | MON | TUE | WED | THUR | FRI |
|---|---|---|---|---|---|---|
| AM |  | 9:00 | 9:00 | 9:00 | 9:00 | 9:00 |
|  |  | 9:30 | 9:30 | 9:30 | 9:30 | 9:30 |
|  |  | 10:00 | 10:00 | 10:00 | 10:00 | 10:00 |
|  |  | 10:30 | 10:30 | 10:30 | 10:30 | 10:30 |
|  |  | 11:00 | 11:00 | 11:00 | 11:00 | 11:00 |
|  |  | 11:30 | 11:30 | 11:30 | 11:30 | 11:30 |
| PM | NOON | NOON | NOON | NOON | NOON |
|  |  | 12:30 | 12:30 | 12:30 | 12:30 | 12:30 |
|  |  | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 |
|  |  | 1:30 | 1:30 | 1:30 | 1:30 | 1:30 |
|  |  | 2:00 | 2:00 | 2:00 | 2:00 | 2:00 |
|  |  | 2:30 | 2:30 | 2:30 | 2:30 | 2:30 |
|  |  | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 |
|  |  | 3:30 | 3:30 | 3:30 | 3:30 | 3:30 |
|  |  | 4:00 | 4:00 | 4:00 | 4:00 | 4:00 |
|  |  | 4:30 | 4:30 | 4:30 | 4:30 | 4:30 |
|  |  | 5:00 | 5:00 | 5:00 | 5:00 | 5:00 |

Please fax your completed form no later than.  Absent a response, all times and dates will be deemed acceptable and a preliminary hearing will be scheduled.

Submitted by: _____    Date: _____

Please circle one:    Claimant              Respondent              Arbitrator

Please circle your time zone:    Eastern      Central        Mountain      Pacific

CASE MANAGER: Linda L. Beyea

In the Matter of the Arbitration between

Re: 14 195 Y 01711 04
    Philadelphia 76ers, L.P.
    and
    Trustmark Insurance Company

# PRELIMINARY HEARING CALENDAR FORM

Please cross out any unavailable periods of time for the week of December 20, 2004:

|     |       | MON   | TUE   | WED   | THUR  | FRI   |
| --- | ----- | ----- | ----- | ----- | ----- | ----- |
| AM  |       | 9:00  | 9:00  | 9:00  | 9:00  | 9:00  |
|     |       | 9:30  | 9:30  | 9:30  | 9:30  | 9:30  |
|     |       | 10:00 | 10:00 | 10:00 | 10:00 | 10:00 |
|     |       | 10:30 | 10:30 | 10:30 | 10:30 | 10:30 |
|     |       | 11:00 | 11:00 | 11:00 | 11:00 | 11:00 |
|     |       | 11:30 | 11:30 | 11:30 | 11:30 | 11:30 |
| PM  |       | NOON  | NOON  | NOON  | NOON  | NOON  |
|     |       | 12:30 | 12:30 | 12:30 | 12:30 | 12:30 |
|     |       | 1:00  | 1:00  | 1:00  | 1:00  | 1:00  |
|     |       | 1:30  | 1:30  | 1:30  | 1:30  | 1:30  |
|     |       | 2:00  | 2:00  | 2:00  | 2:00  | 2:00  |
|     |       | 2:30  | 2:30  | 2:30  | 2:30  | 2:30  |
|     |       | 3:00  | 3:00  | 3:00  | 3:00  | 3:00  |
|     |       | 3:30  | 3:30  | 3:30  | 3:30  | 3:30  |
|     |       | 4:00  | 4:00  | 4:00  | 4:00  | 4:00  |
|     |       | 4:30  | 4:30  | 4:30  | 4:30  | 4:30  |
|     |       | 5:00  | 5:00  | 5:00  | 5:00  | 5:00  |

Please fax your completed form no later than. Absent a response, all times and dates will be deemed acceptable and a preliminary hearing will be scheduled.

Submitted by: _____    Date: _____

Please circle one:    Claimant        Respondent        Arbitrator

Please circle your time zone:    Eastern    Central    Mountain    Pacific

CASE MANAGER: Linda L. Beyea

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA 76ERS L.P., | ) | 04-CV-04972-EL |
| | ) | |
| Plaintiffs, | ) | Philadelphia, Pa. |
| | ) | December 7, 2004 |
| vs. | ) | 11:20 a.m. |
| | ) | |
| TRUSTMARK INSURANCE COMPANY, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EDMUND V. LUDWIG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:              STEPHEN COZEN, ESQ.
                               ROBERT HAYES, ESQ.
                               COZEN O'CONNOR
                               1900 Market Street
                               Philadelphia, PA  19103

For the Defendant:             JEFF ROSENTHAL, ESQ.
Trustmark                      CLEARY, GOTTLIEB, STEEN & HAMILTON
                               One Liberty Plaza
                               New York, NY  10006

                               STEPHEN HARRIS, ESQ.
                               DRINKER BIDDLE & REATH LLP
                               One Logan Square
                               18th & Cherry Streets
                               Philadelphia, PA 19103

For the Defendant:             ROBERT J. KHEEL, ESQ.
Nets                           WILLKIE FARR & GALLAGHER
                               787 7th Avenue
                               New York, NY  10019

Audio Operator:                Dennis Taylor

Rosenthal - Argument                    Page 35

1    that there has been a disagreement?

2              MR. ROSENTHAL:  I can unequivocally say that, Your

3    Honor.

4              THE COURT:  Because why?

5              MR. ROSENTHAL:  Unequivocally.  Because we have told

6    them.  We have told them that we do not agree to a forum other

7    than New York.  The agreement --

8              THE COURT:  Didn't you enter into an agreement that

9    his decision would be deferred until the arbitrators were

10   chosen and so on?

11             MR. ROSENTHAL:  Your Honor, the confirmation by the

12   Triple A that they wrote, first of all, was in another context.

13   This conference call that the Triple A had was -- the Nets were

14   not on it.  And, actually, we were all in agreement, or at

15   least we thought we had an agreement, to ask the Nets who would

16   then be a party to --

17             MR. COZEN:  This is so --

18             THE COURT:  Well, my reaction at this point is this

19   record doesn't support the contention that there has been a

20   disagreement.

21             MR. ROSENTHAL:  Your Honor, the arbitration agreement

22   says it's to be --

23             THE COURT:  Point me to -- what is the evidence that

24   there has been a disagreement at this point?

25             MR. ROSENTHAL:  Two things, Your Honor, or three

The Court - Decision                    Page 36

1    things, Your Honor.  One is the --

2              THE COURT:  And, I'm sorry to say I'm going to have

3    to leave in about three and a half minutes.

4              MR. ROSENTHAL:  Your Honor, the arbitration agreement

5    says if the parties don't agree, it's New York.  The agreement

6    that was memorialized by the Triple A on October 8th simply

7    says the parties will defer discussion, not the parties will

8    defer it to the arbitrators.  The parties will defer the

9    discussion until after the panel is constituted.  It's been

10   constituted.

11             THE COURT:  All right.  Well, on this point, I'm

12   going to ask counsel to give me something this week, a joint

13   submission as to their position on this narrow point of whether

14   or not there has been an agreement.

15             MR. ROSENTHAL:  I think, Your Honor, perhaps the

16   simplest resolution here is as Your Honor suggested, is to hold

17   back for ten days, see if the parties reach agreement, have

18   with Judge Gibbons and the other two arbitrators the situs

19   selected, and at that point in time, once the situs is

20   selected, I think this Court can determine its jurisdiction.

21             THE COURT:  Well, I would still like to know --

22             MR. COZEN:  The man just contra --

23             THE COURT:  Wait a minute, please.

24             MR. COZEN:  I'm awfully sorry, Your Honor.

25             THE COURT:  I would like to know what is in the

The Court - Decision                    Page 37

1    record here that substantiates the position either that the

2    agreement has been deferred, the decision has been deferred or

3    that it's clear that there is no agreement.  It sounds to me as

4    though there is a writing here that says this is going to be

5    deferred.  So on that basis, I don't see how you can say that

6    there -- it's clear that there is a disagreement.

7            MR. ROSENTHAL:  Your Honor, it says this is going to

8    be deferred to a time that's already past.

9            THE COURT:  Okay.  What else -- what else do you

10   have, please?  Go ahead.  What else is there?

11           MR. ROSENTHAL:  Okay.  Regarding the venue issue,

12   Your Honor, if there is no agreement to arbitrate here in

13   Philadelphia, it's not 1391 that the 76ers have cited to the

14   Court.  As Judge Green said in the _Prudential_ case that we've

15   cited to the Court, --

16           THE COURT:  Right.

17           MR. ROSENTHAL:  -- that even if venue is proper under

18   1391, the venue provisions of Section 4 is controlling.  And,

19   the venue provisions of Section --

20           THE COURT:  And, I understand your position on that.

21   Okay.

22           MR. ROSENTHAL:  And, the Third Circuit has been

23   clear, Your Honor, that you can't compel arbitration outside of

24   this district.

25           Regarding, Your Honor, the substance of the dispute

The Court - Decision                    Page 38

1    and the conundrum that Mr. Cozen has described, this is simply

2    -- let me strike that.  The issue that I heard Mr. Cozen say

3    that he would like to actually have happen is not two

4    completely separate proceedings.  He's saying he would like the

5    Court to order his proceeding to go forward, for the Court to

6    decide that his chosen issue goes forward, to stay our right to

7    have a separate arbitration against the Nets, then if he loses

8    that issue, to bring the parties back together.  And, in that

9    case, he would like to consolidate.

10              THE COURT:  I think that's a fairly good summary of

11   the situation.

12              MR. ROSENTHAL:  And, Your Honor, --

13              THE COURT:  Okay.  Well, I'm sorry, I have to leave.

14   Anything else you want to submit in writing, I would be very

15   pleased to receive.  And, I thank you.  To answer my question

16   from my own standpoint, I think this is much ado about much at

17   the moment, but probably not in the long run about a great

18   deal.

19              Okay.  Why don't you settle the case?

20              MR. COZEN:  Your Honor, you said to get you something

21   on this disagreement issue.

22              THE COURT:  Yes, it doesn't have to be at all long.

23              MR. COZEN:  But can we do it within the next couple

24   of days?

25              THE COURT:  Yes.

Page 39

1          MR. COZEN:  I don't want to take --

2          THE COURT:  Yes, please get it to me this week.

3          MR. COZEN:  Fine.

4          THE COURT:  And, what I am interested in is your

5    respective contentions as to what's in the record before me

6    here.  Okay?

7          MR. COZEN: Absolutely.

8          THE COURT:  Thank you.

9          MR. COZEN:  Thank you very much, sir.

10        (Court adjourned)

11                          *  *  *  *  *

                    C E R T I F I C A T I O N

     I, Diana Doman, court approved transcriber, certify that

the foregoing is a correct transcript from the official

electronic sound recording of proceedings in the above-entitled

matter.

                              DIANA DOMAN

Date:      12/8/04

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA 76ERS L.P., | : | Civil Action No.  04-CV-4972 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRUSTMARK INSURANCE COMPANY, and | : | |
| NEW JERSEY NETS BASKETBALL LLC, | : | |
| Defendants. | : | |

## ORDER

AND NOW, this          day of December, 2004, upon consideration of the Motion of plaintiff, Philadelphia 76ers L.P., to compel arbitration pursuant to 9 U.S.C. § 4 and all responses thereto, it is hereby ORDERED that the Motion is GRANTED.

It is further ORDERED that:

(i)  The appointment of a panel of arbitrators in the 76ers' Arbitration Action shall be completed in accordance with the procedure set forth in the parties' arbitration agreement;

(ii)  Trustmark shall dismiss its third party claim against the Nets in the 76ers' Arbitration Action;

(iii)  The 76ers' Arbitration Claim and Trustmark's Arbitration Claim are stayed in order for the 76ers, NBA and Trustmark to submit to the arbitration panel selected in the 76ers' Arbitration Claim, the "preliminary issue" of whether the 76ers are entitled to be paid its Temporary Total Disability Claim with respect to Todd MacCulloch regardless of whether the Application submitted by the New Jersey Nets contained a misrepresentation and/or failed to disclose facts material to the risk.  The preliminary issue being whether the Assignment and policy language bars Trustmark from asserting any defenses or counterclaims against the 76ers (including the right to rescind the policy) based upon misrepresentations made or information provided by the Nets and/or Todd MacCulloch or any of their other acts or omissions;

(iv) The NBA shall be permitted to intervene in the 76ers' Arbitration Claim if it so desires, solely for the purpose of presenting evidence and argument with respect to the preliminary issue to be decided by the arbitration panel selected in the 76ers Arbitration Claim;

(v) The preliminary issue shall be resolved on an expedited basis with limited discovery within ninety (90) days;

(vi) If the arbitration panel selected in the 76ers' Arbitration Claim rules that the application of the Assignment and insurance contract language bars Trustmark from asserting a defense or counterclaim against the 76ers based upon the representations made or information provided by the Nets and/or Todd MacCulloch in the Application or any other act or omission they may have committed, then: (1) Trustmark shall within ten (10) days make payment of the amounts due and owing to the 76ers as of the date of that decision, and thereafter make those payments required under the policy as they accrue; (2) Any claim for extra-contractual damages the 76ers should elect to continue to pursue against Trustmark shall be arbitrated in the 76ers' Arbitration Claim; and (3) Trustmark and the Nets shall separately arbitrate any claims Trustmark wishes to assert against the Nets in Trustmark's Arbitration Claim;

(vii) If the arbitration panel selected in the 76ers' Arbitration Claim rules that the Assignment and insurance contract language do not bar Trustmark from asserting a defense or counterclaim against the 76ers, the stay of the 76ers' Arbitration Claim and Trustmark's Arbitration Claim shall be lifted and the two arbitration cases shall proceed separately; and

(viii) The 76ers are awarded its costs in this proceeding.

The Court retains jurisdiction over the action to enforce, interpret or implement the terms of this Order and to address any other issues that may arise as to whether the parties are arbitrating in accordance with the terms of their agreement which the arbitration panel lacks jurisdiction to resolve.

_____
Hon. Edmond V. Ludwig, USDJ

## CERTIFICATE OF SERVICE

I , Robert W. Hayes, certify that, on this date, I caused a true and correct copy of the foregoing SUPPLEMENTAL MEMORANDUM OF LAW OF PLAINTIFF PHILADELPHIA 76ERS L.P. IN OPPOSITION TO DEFENDANT TRUSTMARK INSURANCE COMPANY'S MOTION TO DISMISS OR TRANSFER VENUE via first class mail, postage paid upon:

Jeffrey A Rosenthal, Esquire
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006

Robert J. Kheel, Esquire
Wilkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY 10019

Stephen C. Baker, Esquire
Drinker Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

Dated:  December 10, 2004

Robert W. Hayes